UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| WINRED, INC.<br><br>     Plaintiff,<br><br>v.<br><br>KEITH ELLISON, in his official capacity as Attorney General for the State of Minnesota; LETITIA JAMES, in her official capacity as Attorney General for the State of New York; WILLIAM TONG, in his official capacity as Attorney General for the State of Connecticut; and BRIAN FROSH, in his official capacity as Attorney General for the State of Maryland,<br><br>     Defendants. | No.:   21-1575 |

**COMPLAINT FOR DECLARATORY RELIEF**

1. This is an action brought under the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201–2202, and Rule 57 of the Federal Rules of Civil Procedure.

2. The Plaintiff, WinRed, Inc., has received several letters from the Defendants (the Attorneys General of Minnesota, New York, Connecticut, and Maryland) as part of a state-law inquiry into campaign-fundraising activities.

3. These letters have sought a wide variety of information regarding WinRed's organization, ownership and leadership, business model, its clients, its internal technical practices, and its internal communications, all while raising the specter of forthcoming enforcement actions with respect to deceptive solicitation practices.

4. As a federally registered political action committee, however, WinRed's activities are regulated solely by the Federal Election Campaign Act, 52 U.S.C. §§ 30101 *et seq*. ("FECA" or "the Act"), and the regulations issued by the Federal Election Commission ("FEC").

1

5. By enacting FECA, Congress set out "to make certain that Federal law is construed to occupy the field with respect to elections to federal office and that the Federal law will be the sole authority under which such elections will be regulated." *See* H.R. Rep. No. 1239, 93d Cong., 2d Sess. 10-11 (1974), *reprinted in Legislative History of the Federal Election Campaign Act Amendments of 1974*, 644–45 (1977).

6. For this reason, FECA expressly "supersede[s] and preempt[s] any provision of State law with respect to election to Federal office." 52 U.S.C.§ 30143(a). WinRed is a federal PAC, and its activities are directed entirely at accepting and distributing earmarked contributions for federal offices—including PACs, parties, and candidates.

7. Because FECA preemption strips the Defendants of their authority not only (a) to investigate WinRed's activities with respect to contributions but also (b) to bring a deceptive-practice action against it for those activities, WinRed respectfully requests that this Court issue a declaratory judgment concluding the same and permanently enjoin Defendants and their successors from investigating WinRed's campaign-fundraising activities or bringing deceptive-practice actions against WinRed for those campaign fundraising activities.

**THE PARTIES**

8. The Plaintiff, WinRed Inc., is federal political action committee created to assist Republican Party-affiliated political candidates and committees. Incorporated in the State of Delaware with its principal place of business in Virginia, WinRed receives earmarked contributions from donors from across the Nation.

9. Defendant Keith Ellison is the Attorney General for the State of Minnesota. As Minnesota's Chief Legal Officer, General Ellison is responsible for, among other things, administering Minnesota's consumer protection laws. According to the April 2021 letter giving

rise to this action, General Ellison is demanding information from WinRed for purported state-law consumer-protection violations based on online political-fundraising activities involving WinRed. General Ellison is sued in his official capacity.

10. Defendant Letitia James is the Attorney General for the State of New York. As New York's Chief Legal Officer, General James is responsible for, among other things, administering New York's consumer protection laws. General James authored the April 2021 letter through which her office and the offices of the other Defendants demanded information from WinRed for purported state-law consumer-protection violations based on online political-fundraising activities involving WinRed. General James is sued in her official capacity.

11. Defendant William Tong is the Attorney General for the State of Connecticut. As Connecticut's Chief Legal Officer, General Tong is responsible for, among other things, administering Connecticut's consumer protection laws. According to the April 2021 letter giving rise to this declaratory judgment action, General Tong is demanding information from WinRed for purported state-law consumer-protection violations based on online political-fundraising activities involving WinRed. General Tong is sued in his official capacity.

12. Defendant Brian Frosh is the Attorney General for the State of Maryland. As Maryland's Chief Legal Officer, General Frosh is responsible for, among other things, administering Maryland's consumer protection laws. According to the April 2021 letter giving rise to this declaratory judgment action, General Frosh is demanding information from WinRed for purported state-law consumer-protection violations based on online political-fundraising activities involving WinRed. General Frosh is sued in his official capacity.

## JURISDICTION & VENUE

13. Because the allegations in this Complaint raise issues of federal preemption under the Federal Election Campaign Act, 52 U.S.C. §§ 30101 *et seq.*, and the Supremacy Clause of the U.S. Constitution, U.S. CONST., Art. VI, cl. 2, this Court has subject matter jurisdiction under 28 U.S.C. § 1331.

14. The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

15. In an April 2021 letter sent to WinRed's President from Defendant Letitia James (and on behalf of Defendants Keith Ellison, William Tong, and Brian Frosh), the Defendants demanded information from WinRed related to suspected state-law consumer-protection violations based on online political fundraising activities involving WinRed.

16. This inquiry, the demand for documents included in the Defendants' letter, WinRed's objection to the demand on federal-preemption grounds, and the specter of forthcoming deceptive-practice actions, satisfy the Declaratory Judgment Act's "actual controversy" requirement. 28 U.S.C. § 2201(a).

17. This actual controversy is of sufficient immediacy and reality to warrant the declaratory relief requested by WinRed.

18. Under 28 U.S.C. § 1391(b), venue is proper in the District of Minnesota because one of the Defendants, Minnesota Attorney General Keith Ellison, resides and works in this District.

## THE FEDERAL ELECTION CAMPAIGN ACT &
## THE FEDERAL ELECTION COMMISSION'S REGULATORY REGIME

19. When FECA was first enacted, it was described broadly as an Act "[t]o promote fair practices in the conduct of election campaigns for Federal political offices, and for other purposes." Pub. L. 92–225, 86 Stat. 3.

20. To ensure that federal elections are administered uniformly across the Nation, FECA provides that "the provisions of this Act, and of rules prescribed under this Act, supersede and preempt any provision of State law with respect to election to Federal office." 52 U.S.C.§ 30143(a).

21. According to the House Committee that drafted FECA's preemption provision, the intent was "to make certain that Federal law is construed to occupy the field with respect to elections to federal office and that the Federal law will be the sole authority under which such elections will be regulated." *See* H.R. Rep. No. 1239, 93d Cong., 2d Sess. 10-11 (1974), *reprinted in Legislative History of the Federal Election Campaign Act Amendments of 1974*, 644–45 (1977).

22. The FEC, via a "rule[] prescribed under th[e] Act," 52 U.S.C.§ 30143(a), has correspondingly recognized and confirmed that "[f]ederal law supersedes State law concerning the . . . (1) "[o]rganization and registration of political committees supporting Federal candidates"; (2) "[d]isclosure of receipts and expenditures by Federal candidates and political committees"; and (3) "[l]imitation on contributions and expenditures regarding Federal candidates and political committees." 11 C.F.R. § 108.7(b).

23. In contrast, the FEC has stated that FECA does *not* "supersede State laws" that "provide for the . . . "(1) "[m]anner of qualifying as a candidate or political party organization"; (2) "[d]ates and places of elections"; (3) "[v]oter registration"; (4) "[p]rohibition of false registration, voting fraud, theft of ballots, and similar offenses"; (5) "[c]andidate's personal

5

financial disclosure"; or (6) "[a]pplication of State law to the funds used for the purchase or construction of a State or local party office building to the extent described in 11 CFR 300.35." 11 C.F.R. § 108.7(c).

24. In accordance with 2 U.S.C. § 438(d), the FEC submitted this regulation to Congress in 1977. Congress did not disapprove of it, and it went into effect on April 13, 1977.

25. For decades, the FEC has issued advisory opinions indicating the reach of its jurisdiction (and, consequently, the extent to which FECA preempts state law).

26. For example, on July 2, 1981, the FEC issued an advisory opinion to Congressman Bill Archer, which informed him that, as a matter of FECA preemption, the City of Houston could not mandate the inclusion of a warning as to Houston's anti-littering ordinances on political advertising materials. *See* FEC AO 1981-27. In other words, the FEC was of the opinion that FECA preempts state and local law mandating the inclusion of warnings and disclosures on political advertisements, to the extent they exceed the disclosures and warnings required by federal law.

27. On December 1, 1989, the FEC issued an advisory opinion in response to an inquiry submitted on behalf of Dick Bond for Congress. *See* FEC AO 1989-26. The inquiry requested the FEC's position regarding "the use of a system for automatic fund transfers from a contributor's bank account to a Committee account." *Id*. The FEC allowed this practice while warning of the contribution limits and reporting requirements that would need to be monitored, given the recurring nature of the automatic withdrawals. In other words, the FEC was of the opinion that it had jurisdiction over the use of automatic/recurring campaign contributions.

28. On April 21, 1995, the FEC issued an advisory opinion in response to an inquiry submitted by the Treasurer of NewtWatch PAC. *See* FEC AO 1995-5. In part, the inquiry queried "whether the Committee may use the Internet, the World Wide Web and related technology to

6

accept contributions 'using credit cards, electronic fund transfers and potentially other electronic means.'" *Id*. The FEC allowed this practice while warning of the contribution limits and reporting requirements that would need to be monitored. *Id*. In other words, the FEC was of the opinion that it had jurisdiction over the use of the internet and related technology to solicit and accept credit-card-based campaign contributions.

29. On April 11, 2019, the FEC issued an advisory opinion in response to an inquiry submitted on behalf of Prytany LLC. *See* FEC AO 2019-04. "Prytany ha[d] developed an online platform . . . accessible by internet-connected devices that enables individuals to make contributions to principal campaign committees and national political party committees that have enrolled with Prytany." *Id*. "Enrolled contributors" had the ability to "use the Platform to make one-time or recurring contributions or pledges for future contributions to Enrolled Committees." *Id*. The FEC approved Prytany's business model while warning it that it remains "subject to requirements concerning forwarding of contributions." *Id*. In other words, the FEC has maintained its opinion that it has jurisdiction over "online contribution processing platforms." *Id*.

30. The FEC also routinely adjudicates "matters under review" ("MURs"), which are enforcement actions initiated either by a sworn complaint or by an internal administrative action.

31. On January 25, 2018, the FEC issued MUR 7255, which resolved a complaint brought against the Trump Make America Great Again Committee and its treasurer. The complainant alleged that she had authorized the Committee to make four automatic, recurring withdrawals from her bank account, but that the Committee made four additional withdrawals after she asked it to stop. *Id*. The FEC dismissed the complaint *not* because it had no jurisdiction over it, but instead did so as a matter of "prosecutorial discretion." *Id*.

32. On January 26, 2018, the FEC issued MUR 7201, which resolved a materially similar complaint brought against "Ted Cruz for Senate." Specifically, the complainant alleged that "Ted Cruz for Senate" continued automatically withdrawing money from her bank account after she called to cancel her recurring, automatic payments. Again, the FEC dismissed the complaint *not* because it had no jurisdiction over it, but instead did so as a matter of "prosecutorial discretion." *Id*.

### STATEMENT OF FACTS

33. As a federal PAC, WinRed is subject to a significant number of FECA required disclaimers, disclosures, and information collection requirements. *See, e.g.*, 52 U.S.C. §§ 30101 *et seq.*; 11 C.F.R. § 108.7.

34. WinRed complies with all of the FECA-required disclaimer, disclosure and information collection requirements.

35. On April 29, 2021, on behalf of all Defendants, New York Attorney General Letitia James sent a letter to WinRed's President. Ex. A.

36. "[W]riting on behalf of the Attorneys General of the States of Connecticut, Maryland, Minnesota and New York," General James's letter inquired about "certain fundraising practices . . . , including WinRed's use of pre-checked boxes to lock-in recurring donations on a monthly and even weekly basis." Ex. A.

37. In the view of the Defendants, "various state and federal laws specifically require businesses to provide clear and conspicuous disclosures to consumers before an automatic renewal or additional purchase can take effect." Ex. A.

38. General James's letter on behalf of the Defendants noted that "the failure" to include such disclosures could constitute "a deceptive practice." Ex. A.

8

39. "[T]o better understand WinRed's practices and ensure that consumers in our states are not subject to deceptive or unlawful solicitation practices," General James's letter on behalf of the Defendants asked "WinRed to provide . . . information" relating to, among other things, WinRed's organizational structure, clients, complaints, refunds provided, policies, and internal communications. Ex. A.

40. On June 1, 2021, WinRed, through counsel, sent a letter informing the Defendant Attorneys General that, because "WinRed is a federally registered political action committee," "its activities are regulated by the Federal Election Campaign Act," and because "federal law governs the fundraising practices . . . that are purportedly at issue in your inquiry," the Defendants' "investigation of these activities" is preempted Ex. B.

41. The Defendant Attorneys General responded via letter on June 17, 2021. Ex. C. In this letter, the Defendants they took the position that their "state consumer protection laws are not preempted by the Federal Election Campaign Act." Ex. C.

42. On June 30, 2021, WinRed responded to the Defendants' June 17, 2021 letter. Ex. D. While "continu[ing] to maintain []its position regarding federal pre-emption . . . and without waiving any of its rights, privileges or defenses," WinRed, through counsel, provided the Defendants "with copies of its public filings with the Federal Election Commission," which "provided detailed information about its organization and its financial transactions." Ex. D.

**FIRST CAUSE OF ACTION**
**Declaratory Judgment that the Federal Election Campaign Act, 52 U.S.C. § 30143, Expressly Preempts the State Laws at Issue Here**

43. WinRed restates and incorporates by reference each and every allegation in paragraphs 1 through 42.

44. Under the Supremacy Clause, state laws that "interfere with, or are contrary to the laws of congress, made in pursuance of the constitution," are invalid. U.S. CONST., Art. VI, cl. 2.

45. "[E]xpress preemption[] occurs where Congress has in express terms declared its intent to preclude state regulation in a given area." *Weber v. Heaney*, 793 F. Supp. 1438, 1442 (D. Minn. 1992)

46. Because FECA "supersede[s] and preempt[s] any provision of State law with respect to election to Federal office," 52 U.S.C. § 30143(a), and because the Defendants are investigating WinRed for purported state-law consumer-protection violations "with respect to" fundraising for federal elections, those state-law consumer-protection provisions are expressly preempted.

47. An actual, present and justiciable controversy has arisen between WinRed and Defendants that the Federal Election Campaign Act, 52 U.S.C. § 30143, expressly preempts the state laws at issue here.

48. Accordingly, WinRed seeks declaratory judgment from this Court that Defendants' investigations of WinRed for purported state-law consumer-protection violations "with respect to" fundraising for federal elections are unlawful because those state-law consumer-protection provisions are expressly preempted.

WHEREFORE, WinRed respectfully requests that the Court (1) issue a declaratory judgment concluding that the Defendants' inquiry is expressly preempted by FECA and (2) permanently enjoin the Defendants and their successors from investigating WinRed's

campaign-fundraising activities or bringing deceptive-practice actions against WinRed for those campaign fundraising activities.

## SECOND CAUSE OF ACTION
### Declaratory Judgment that the Federal Election Campaign Act, 52 U.S.C. § 30143, Impliedly Preempts the State Laws at Issue Here

49. WinRed restates and incorporates by reference each and every allegation in paragraphs 1 through 42.

50. Under the Supremacy Clause, state laws that "interfere with, or are contrary to the laws of congress, made in pursuance of the constitution," are invalid. U.S. CONST., Art. VI, cl. 2.

51. "[I]mplied preemption[] occurs where Congress, through the structure or objectives of federal law, has impliedly precluded state regulation in an area." *Weber*, 793 F. Supp. at 1442.

52. Under an implied-preemption theory, "Congress' intent to supersede state law altogether may be inferred from a pervasive scheme of federal regulations that is designed to effectuate a strong federal interest." *Id*.

53. In other words, "[s]uch a scheme permits the inference that Congress left no room for supplementary state regulation." *Id*.

54. "Put another way, preemption is implied where a federal statutory scheme reflects Congress' intent to 'occupy the field.'" *Id*.

55. Because FECA and the FEC have thoroughly regulated federal campaign fundraising via disclosures and warnings on political advertisements, *see, e.g.*, FEC AO 1981-27, recurring payments, *see, e.g.*, FEC AO 1989-26, credit card payments, *see, e.g.*, and payments made over the internet, *see, e.g.*, FEC AO 1995-5, FEC AO 2019-04, Congress has intended to "occupy the field" in which WinRed operates.

11

56. The Defendants are investigating whether the warnings and disclaimers relating to online, recurring political-campaign fundraising contributions accepted and distributed by WinRed violate state law.

57. In other words, the Defendants are attempting to inject state law into an area that Congress and the FEC have plainly and fully occupied.

58. For this reason, the state-law consumer-protection statutes underlying the Defendants' investigation are impliedly preempted.

59. An actual, present and justiciable controversy has arisen between WinRed and Defendants that the Federal Election Campaign Act, 52 U.S.C. § 30143, and FEC regulations promulgated thereunder, impliedly preempt the state laws at issue here.

60. Accordingly, WinRed seeks declaratory judgment from this Court that Defendants' investigations of WinRed for purported state-law consumer-protection violations "with respect to" fundraising for federal elections are unlawful because those state-law consumer-protection provisions are impliedly preempted.

WHEREFORE, WinRed respectfully requests that the Court (1) issue a declaratory judgment concluding that the Defendants' inquiry is impliedly preempted by FECA and (2) permanently enjoin the Defendants and their successors from investigating WinRed's campaign-fundraising activities or bringing deceptive-practice actions against WinRed for those campaign fundraising activities.

## THIRD CAUSE OF ACTION
**Declaratory Judgment that the Federal Election Campaign Act, 52 U.S.C. § 30143, Conflicts With, and Therefore Preempts, the State Laws at Issue Here**

61. WinRed restates and incorporates by reference each and every allegation in paragraphs 1 through 42.

62. Under the Supremacy Clause, state laws that "interfere with, or are contrary to the laws of congress, made in pursuance of the constitution," are invalid. U.S. CONST., Art. VI, cl. 2.

63. "[C]onflict preemption[] occurs . . . where a state law actually conflicts with federal objectives and goals," which can arise when "compliance with both federal and state regulations is impossible, or when a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Weber*, 793 F. Supp. at 1443.

64. The FEC is of the opinion that state law cannot mandate warnings and disclosures on political advertisements beyond that required by FECA and the FEC. *See* FEC AO 1981-27.

65. The FEC has also expressly approved of recurring payment arrangements. *See* FEC AO 1989-26.

66. The Defendants are investigating whether, as a matter of state law, WinRed's practices violate "various state and federal laws specifically require[ing] clear and conspicuous disclosures to consumers before an automatic renewal or additional purchase can take effect." Ex. A.

67. In so doing, the Defendants are investigating whether WinRed's practices, while in full compliance with FECA and FEC regulations, nonetheless violate State law.

68. For this reason, the state-law consumer-protection statutes underlying the Defendants' investigation are preempted as a matter of conflict preemption.

69. An actual, present and justiciable controversy has arisen between WinRed and Defendants that the state laws at issue here.conflict with the Federal Election Campaign Act, 52 U.S.C. § 30143, and FEC regulations promulgated thereunder.

70. Accordingly, WinRed seeks declaratory judgment from this Court that Defendants' investigations of WinRed for purported state-law consumer-protection violations that "respect" fundraising for federal elections are unlawful because those state-law consumer-protection provisions are conflict with and are therefore preempted by the Federal Election Campaign Act, 52 U.S.C. § 30143, and FEC regulations.

WHEREFORE, WinRed respectfully requests that the Court (1) issue a declaratory judgment concluding that the Defendants' inquiry is preempted because it conflicts with FECA and (2) permanently enjoin the Defendants and their successors from investigating WinRed's campaign-fundraising activities or bringing deceptive-practice actions against WinRed for those campaign fundraising activities.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, WinRed, Inc., prays for judgment as follows:

A. A declaration that the state-law consumer protection statutes that form the basis of the Defendants' investigation into WinRed, Inc. are preempted by the Federal Election Campaign Act;

B. Permanently enjoin the Defendants from taking any additional investigatory and/or enforcement action with respect to online political fundraising practices involving WinRed based on their respective consumer-protection statutes; and

C. Any further relief to which WinRed may be entitled.

Dated: July 7, 2021                                     Respectfully submitted by:

/s/ Thomas H. Boyd
Thomas H. Boyd (MN Bar No. 200517)
Kyle R. Kroll (MN Bar No. 398433)
tboyd@winthrop.com
WINTHROP & WEINSTINE, P.A.
3500 Cappella Tower
225 South Sixth Street
Minneapolis, MN 55402-4629
Phone: 612-604-6505
Fax: 612-604-6805


/s/ Jason Torchinsky
Jason Torchinsky (DC Bar No. 976033)*
jtorchinsky@holtzmanvogel.com
Edward M. Wenger (DC Bar No. 1001704)*
emwenger@holtzmanvogel.com
HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK, PLLC
2300 N. Street N.W., Ste. 643-A
Washington, D.C. 20037
Phone: (202) 737-8808
Fax: (540) 341-8809
*pro hac vice motion forthcoming

*Counsel for Plaintiff WinRed, Inc.*

22090978v1

15