Exhibit A



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES  
ATTORNEY GENERAL

JANE M. AZIA  
BUREAU CHIEF  
CONSUMER FRAUDS & PROTECTION BUREAU

Gerrit Lansing  
President  
WinRed, Inc.  
1776 Wilson Blvd., Suite 503  
Arlington, VA 22209

April 29, 2021

Dear Mr. Lansing:

    I am writing on behalf of the Attorneys General of the States of Connecticut, Maryland, Minnesota and New York concerning certain fundraising practices involving WinRed, Inc. ("WinRed"), including WinRed's use of pre-checked boxes to lock-in recurring donations on a monthly and even weekly basis. News reports suggest that this practice has led to complaints from consumers and refunds by WinRed, and may have resulted in significant costs and harm to donors who did not intend or know that WinRed would continue withdrawing money from their accounts beyond their initial donation to a political candidate, party or committee. Consumers report that they had been charged for regular contributions that they did not intend and could not afford.

    Our offices have significant experience with pre-checked solicitations and other forms of "negative option" marketing to consumers. We believe that such solicitations can be inherently misleading, and result in consumers making unwanted and unintended purchases. For that reason, various state and federal laws specifically require businesses to provide clear and conspicuous disclosures to consumers before an automatic renewal or additional purchase can take effect, and define the failure to do so as a deceptive practice.

    In order to better understand WinRed's practices and ensure that consumers in our states are not subject to deceptive or unlawful solicitation practices, we are asking WinRed to provide the following information for the time period from January 1, 2019 to the present:

1. An organizational chart that identifies:
    a. All corporations, LLCs and other entities affiliated with WinRed;
    b. All parties with an ownership interest in WinRed (including a description of the nature and extent of such ownership interest); and
    c. All officers of WinRed with their job titles and inclusive dates of employment.

2. A list of all political committees, parties and candidates (and any other clients) for whom WinRed has used pre-checked recurring or additional donation boxes in a fundraising solicitation or donation page.
3. Screen shots (or comparable documents representing WinRed's website as it appears to donors and other users) for all web pages that WinRed has hosted or used to solicit donations that included a pre-checked box for recurring or additional donations, including all disclosures made to potential donors about recurring donations and any other text and images that accompany the pre-checked boxes. For each such web page, include screen shots or comparable documents documenting how or when the interface, wording, or format changed over time for that page.
4. All complaints received by WinRed from donors in Connecticut, Maryland, Minnesota and New York concerning additional or recurring donations, as well as your responses to those complaints.
5. A list of all refunds provided by WinRed to donors in Connecticut, Maryland, Minnesota and New York, including for each refund:
    a. Whether the donor made the refunded contribution through a web page that used pre-checked boxes;
    b. The name of the committee, party or candidate who received the donation;
    c. The total amount of the donation made by the donor;
    d. The total amount returned to each donor; and
    e. Any fees retained by WinRed when making the refund.
6. All written policies and procedures concerning:
    a. WinRed's pre-checked box option for political fundraising;
    b. WinRed's refunding of donations made through pre-checked boxes;
    c. WinRed's policies for making refunds in response to donor complaints; and
    d. WinRed's retention of fees when making refunds to donors.
7. All communications between WinRed and its clients, potential clients or other parties concerning recurring donations, including any representations about WinRed's use of pre-checked boxes or other methods for securing recurring donations, the disclosures made to donors about the use of recurring donations, and any representations about WinRed's ability to secure recurring donations for its clients.
8. All documents concerning A/B testing, user interface testing, user stories, or other analyses, studies, and reports concerning the content and layout of pre-checked recurring donation boxes.
9. All documents concerning analyses, studies and reports concerning the effectiveness, impact and/or use of pre-checked recurring donation boxes.
10. Documents showing the conversion rate of website donors who made recurring donations in the absence of a pre-checked recurring donation box as compared to when a pre-checked recurring donation box was added.

We request a response to these requests by May 17, 2021. Please contact Assistant Attorney General Mark Ladov (at mark.ladov@ag.ny.gov or 212-416-8622) with any questions or to schedule further discussion of this matter.

Sincerely,

*Jane M. Azia*

Jane M. Azia
Bureau Chief
Consumer Frauds and Protection Bureau

*Mark Ladov*

Mark Ladov
Assistant Attorney General
Consumer Frauds and Protection Bureau

Exhibit B

# Holtzman Vogel

HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC

Jane M. Azia
Bureau Chief
Consumer Frauds and Protection Bureau
Office of the Attorney General
The Capitol
Albany, NY 12224-0341

Mark Ladov
Assistant Attorney General
Consumer Frauds and Protection Bureau
Office of the Attorney General
28 Liberty Street
New York, NY 10005

**SENT VIA EMAIL: Jane.Azia@ag.ny.gov; Mark.Ladov@ag.ny.gov**

June 1, 2021

Dear Ms. Azia and Mr. Ladov:

We are in receipt of your letter of April 29, 2021, represented to be sent on behalf of the Attorneys General of Connecticut, Maryland, Minnesota, and New York concerning the fundraising practices of our client, WinRed, Inc. ("WinRed"). WinRed is a federally registered political action committee and its activities are regulated by the Federal Election Campaign Act. For the reasons stated below, it is our client's position that federal law governs the fundraising practices of federal political committees that are purportedly at issue in your inquiry, preempting state law investigation of these activities.

First, and most importantly, the campaign fundraising practices of federal PACs that collect contributions through WinRed are regulated by the Federal Election Campaign Act of 1971 ("FECA"), as amended, and by the federal agency tasked with enforcing that statute, the Federal Election Commission ("FEC"). Since 1974, FECA has included a provision dictating that the statute and associated FEC regulations "supersede and *preempt* any provision of State law with respect to election to Federal office." 52 U.S.C. § 30143(a) (emphasis added). The FEC has also promulgated a regulation listing the areas in which state laws can permissibly preempt federal law—none of those areas pertain to the federal fundraising activity implicated here. 11 C.F.R. 108.7(b).

In addition to promulgating regulations, the FEC has outlined the scope of federal preemption under FECA in advisory opinions. In a 1999 advisory opinion concerning Pennsylvania's attempt to force a federal PAC to register with the state as a charity, the FEC noted that FECA preempts state law in a wide variety of areas, including state disclosure or

advertising disclaimer requirements with broader requirements than those contained in federal law. *See* FEC Advisory Opinion 1999-12 at 6. Like the committee in that case, the federal PACs fundraising through WinRed are "registered political committee[s] … soliciting contributions that are … expended by [them] for the purpose of influencing Federal elections," and therefore "engaging in Federal election activity that is governed by the Act"—*not* state campaign activity subject to state regulation. *Id.* at 4. Therefore, just as in the Pennsylvania case, preemption is here "compelled by the need for one set of requirements for Federal campaign finance activities, rather than subjecting Federal political committees … to a multiplicity of requirements depending upon the number of States in which they solicit contributions." *Id.* at 7.

Federal courts examining the issue of preemption in the context of federal election law have come to the same conclusion as the FEC: FECA preempts state law in this realm. It is a fundamental tenet of statutory interpretation that "Congress' intent is the touchstone…. [and] [w]hen Congress has spoken expressly … the preemptive scope of a federal law is governed entirely by the express language." *Weber v. Heaney*, 995 F.2d 872, 875 (8th Cir. 1993). Once a federal political committee has satisfied its legal obligations to the FEC, a state regulatory entity cannot subsequently "attempt to impose on [the] federal political committee [the state]'s requirements" concerning campaign finance because such efforts are preempted by FECA. *Bunning v. Kentucky*, 42 F.3d 1008, 1012 (6th Cir. 1994). States cannot sidestep the express intent of federal law and ignore specific federal agency guidance simply because they believe that they know best.

To be sure, the Attorneys General of Connecticut, Maryland, Minnesota, and New York have not actually alleged that their state laws preempt FECA, because they have not identified any provision of state law that WinRed allegedly violated. Even if the Attorneys General did identify such a law, FECA is "precisely the kind of detailed statute whose specific provisions control matters that might otherwise fall under the total governance of a more broadly conceived and crafted statute," so FECA would still preempt any contrary state law in this realm. *Galliano v. U.S. Postal Serv.*, 836 F.2d 1362, 1368 (D.C. Cir. 1988) (Circuit Judge Ginsberg, Ruth Bader).

In addition to the express terms of FECA itself, the FEC has provided reams of specific guidance to help federal PACs operate in compliance with federal law even in the face of changing fundraising practices. *See, e.g.*, FEC Advisory Opinion 1999-22 (explaining the application of FECA to a software vendor that processed contributions to federal candidates); FEC Advisory Opinion 1999-9 (describing the kinds of screening procedures that federal PACs must implement when soliciting online credit card contributions).

There has been no allegation that WinRed has failed to satisfy any of its obligations to the FEC under FECA or related regulations—and even if it had, state governments are not the law enforcement entities tasked with investigating such violations. In fact, federal law has explicitly provided that the Federal Election Commission is the venue for any civil disputes concerning the application of FECA or areas of law in which FECA occupies the field.

**HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK** PLLC

Second, WinRed is a Delaware corporation with its principal place of business in Virginia. It does not direct its activities toward the jurisdictions of Connecticut, Maryland, Minnesota, or New York in any particular way, other than receiving funds from contributors in those jurisdictions. Therefore, even if residents of Connecticut, Maryland, Minnesota, and New York voluntarily contributed to federal political committees raising money through WinRed, it is not clear that the state attorneys general named in the April 29th letter have personal jurisdiction (general or specific) over WinRed itself.

Finally, we note that ActBlue, a Democratic donation-processing platform, indisputably allows pre-checked recurring contribution boxes, as acknowledged by media outlets like *the New York Times*. In fact, the pre-checked boxes committees may choose to use to solicit contributions through WinRed are based on tactics and technology ActBlue has implemented for years – long before WinRed's formation. *See* Shane Goldmacher, *How Trump Steered Supporters Into Unwitting Donations*, N.Y. Times, April 3, 2021, https://www.nytimes.com/2021/04/03/us/politics/trump-donations.html; *see also* Goldmacher, *F.E.C. Asks Congress to Ban Prechecked Recurring Donation Boxes*, N.Y. Times, May 6, 2021, https://www.nytimes.com/2021/05/06/us/politics/fec-trump-donations.html (acknowledging that the Democratic Senatorial Campaign Committee (DSCC) and the Democratic Congressional Campaign Committee (DCCC) continue to use pre-checked recurring donation boxes as a fundraising tool ahead of the 2022 midterm elections). We raise this specifically because we understand that the inquiry of the Attorneys General was prompted at least in part by media reports such as those referenced above. Accordingly, it would be problematic for those who contribute through WinRed, a Republican PAC, to face an inquiry based on the use of pre-checked boxes, while ActBlue, a Democratic platform, is not similarly investigated by the state Attorneys General for the same fundraising practices on its online platform.

We trust you agree that the facts set forth in this letter effectively close this inquiry.

Sincerely,

Jason Torchinsky
Jessica Furst Johnson
Counsel to WinRed, Inc.

Exhibit C

   

Jason Torchinsky
Holtzman Vogel Baran Torchinsky & Josefiak, PLLC
2300 N Street, Suite 643A
Washington, DC 20037

Jessica Furst Johnson
Holtzman Vogel Baran Torchinsky & Josefiak, PLLC
2300 N Street, Suite 643A
Washington, DC 20037

**Via email to jtorchinsky@HoltzmanVogel.com and jessica@hvjt.law**

June 17, 2021

Dear Mr. Torchinsky and Ms. Johnson:

We are in receipt of your letter on behalf of WinRed, Inc. ("WinRed") dated June 1, 2021. As stated to WinRed's counsel at the outset of this investigation, and as explained further below, the Attorneys General of Connecticut, Maryland, Minnesota and New York have authority to enforce our States' consumer protection laws.[1] These laws protect our residents from deceptive, unfair and fraudulent practices in the solicitation of contributions, including the

---

[1] *See, e.g.,* N.Y. Exec. Law § 63(12) (authorizing the Attorney General to investigate and remedy "repeated fraudulent or illegal acts or . . . persistent fraud or illegality in the carrying on, conducting or transaction of business"); N.Y. Gen. Bus. Law § 349(a) (making unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state"); Conn. Gen. Stat. § 42-110d(c) (authorizing the Commissioner of Consumer Protection to investigate "any person suspected of using, having used or about to use any method, act or practice declared by section 42-110b to be unlawful"); Conn. Gen. Stat. § 42-110b (making "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" unlawful); Md. Code Ann., Com. Law § 13-204(A)(2) and (4) (authorizing the Consumer Protection Division to "[i]nitiate its own investigation of any unfair or deceptive trade practice . . . [and] issue a cease and desist order with respect to any practice found by the Division to be an unfair or deceptive trade practice."); Minn. Stat. § 8.31 (stating "[t]he attorney general shall investigate violations of the law of this state respecting unfair, discriminatory, and other unlawful practices in business, commerce, or trade"); Minn. Stat. §§ 325F.69 & 325D.44.

1

use of pre-checked boxes to trap donors into making unintended recurring donations. Our state consumer protection laws are not preempted by the Federal Election Campaign Act ("FECA"). The FECA and implementing regulations promulgated by the Federal Election Commission ("FEC") address issues such as the organization of federal political committees, disclosures by federal candidates and committees, and limitations on contributions and expenditures in a federal election. They do not address the states' ability to protect our residents from the deceptive and fraudulent practices under investigation. Therefore, your assertions about federal preemption are incorrect and provide no basis for WinRed's refusal to respond to our inquiry.

Indeed, your letter misstates the scope of federal preemption. "[C]ourts have consistently indicated that FECA's preemptive scope is narrow in light of its legislative history." *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 201 (5th Cir. 2013). FECA does not preempt state laws of general application that do not contravene FECA's express provisions, such as the prohibitions against fraudulent and deceptive practices that are the basis of this investigation.

This is plainly true here, where the FEC has acknowledged that it lacks statutory authority to effectively assist individuals who unknowingly authorized recurring contributions and "attempted unsuccessfully to cancel the recurring transactions with the political committee." *See* Federal Election Commission, 2021 Legislative Recommendations, Agenda Document No. 21-24-A1 (approved May 6, 2021) at 12-13, available at https://www.fec.gov/resources/cms-content/documents/mtgdoc-21-24-A1.pdf. Accepting WinRed's preemption claims would leave government agencies at both the state and federal level without *any* tools to investigate and remedy the practices behind these donor complaints.

WinRed's assertion that the states lack personal jurisdiction to investigate its use of pre-checked solicitations is also wrong. WinRed cannot collect funds from donors in our states and then claim our states lack personal jurisdiction. Courts have repeatedly confirmed that State Attorneys General have jurisdiction to investigate corporations that profit from deceptive or fraudulent practices aimed at the residents of our states, regardless of where those corporations are incorporated or where their head office is located. Moreover, WinRed collects contributions for candidates for state and local office whose activities are governed by state law and where federal preemption does not apply.

Our offices are committed to protecting *all* our states' residents. Political donors have the right to be safe from fraud and deception, regardless of their political affiliation or the candidates or causes they support. WinRed's unfounded accusations of partisanship have no merit. And they provide no basis for WinRed to refuse to respond to our inquiry.

We trust that this letter addresses your objections fully, and that WinRed will agree to respond to our confidential inquiry at this time. We request a complete response to our letter request **no later than June 30, 2021**.

Sincerely,

Jane M. Azia
Bureau Chief
Consumer Frauds and Protection Bureau
Office of the New York State Attorney General

Michael C. Wertheimer
Deputy Associate Attorney General &
Chief of the Consumer Protection Section
Office of the Connecticut Attorney General

Philip Ziperman
Deputy Chief
Consumer Protection Division
Office of the Maryland Attorney General

James W. Canaday
Deputy Attorney General
Office of the Minnesota Attorney General

Exhibit D



June 30, 2021

Mark Ladov
Consumer Frauds and Protection Bureau
Office of the Attorney General
28 Liberty Street
New York, NY 10005

Dear Mr. Ladov,

Thank you for your letter of June 17, 2021 reiterating your request for information from WinRed.

My client continues to maintain that its position regarding federal pre-emption of this matter is correct. However, and without waiving any of its rights, privileges or defenses, my client has agreed to provide you with copies of its public filings with the Federal Election Commission that provided detailed information about its organization and its financial transactions.

The enclosed USB Drives contains 12 files, totaling 24.33 GB. These files are available to the public on the Federal Election Commission website:
https://www.fec.gov/data/committee/C00694323/?tab=filings

We hope that information is sufficient to resolve any questions you might have.

Sincerely,

Jason Torchinsky

JBT/mka
Enclosures