# EXHIBIT 1

**STATE OF CONNECTICUT**
**BEFORE THE COMMISSIONER OF CONSUMER PROTECTION**

**CIVIL INVESTIGATIVE DEMAND**

**TO:    WinRed, Inc.**
**1776 Wilson Blvd**
**Arlington, VA 22209**

**WinRed, Inc.**
**c/o North Rock Reports LLC (as Registered Agent)**
**15405 John Marshall Hwy**
**Haymarket, VA 20169-2706**

**BY AUTHORITY OF THE STATE OF CONNECTICUT**, and more particularly, pursuant to the Connecticut Unfair Trade Practices Act ("CUTPA"), Chapter 735a of the Connecticut General Statutes, and the authority granted the Commissioner of Consumer Protection for the State of Connecticut by virtue of Section 42-110d of the Connecticut General Statutes, **WINRED, INC.** (the "Respondent"), is hereby commanded to present to the Commissioner, UNDER OATH, by delivering to the Department of Consumer Protection, c/o Jonathan J. Blake, Assistant Attorney General, Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, (860) 808-5400, Jonathan.blake@ct.gov, on or before **5:00 in the afternoon of August 16, 2021**, production of Documentary material in connection with an investigation into the Respondent's practices relating to soliciting unintended donations from Connecticut consumers which may constitute unfair or deceptive acts or practices in violation of the provisions of CUTPA.  The Respondent is notified not to destroy, discard, alter in any manner, or transfer from their possession, any Documentary material requested or identified in any of the Respondent's responses to the Document requests herein below.

### A.  General Definitions and Rules of Construction

1.    "All" means each and every.

2.    "Any" means any and all.

3.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the CID all information or Documents that might otherwise be construed to be outside of its scope.

4.    "CID" means this Civil Investigative Demand and any schedules and attachments thereto.

5.    "Communication" means any conversation, discussion, letter, email,

1

memorandum, meeting, note or other transmittal of information or message, whether transmitted in writing, orally, electronically or by any other means, and shall include any Document that abstracts, digests, transcribes, records or reflects any of the foregoing.

6. "Concerning" means, directly or indirectly, in whole or in part, relating to, referring to, describing, evidencing or constituting.

7. "Custodian" means any Person or Entity that, as of the date of this CID, maintained, possessed, or otherwise kept or controlled such Document.

8. "Data Dictionary" means documentation of the organization and structure of the databases or data sets that is sufficient to allow their reasonable use by the Connecticut Office of the Attorney General, including, for each table of information: (a) the size including the total number of records and file size (compressed and uncompressed) of the table; (b) a general description; (c) a list of field names; (d) a definition for each field as it is used by the Company; (e) definitions of all codes and acronyms that appear as field values; (f) the format (including variable type and length), total record counts, null value counts, and total unique record counts of each field; (g) the fields that are primary keys for the purpose of identifying a unique observation; and (h) the fields that are foreign keys for the purpose of joining tables.

9. "Document" is used herein in the broadest sense of the term and means all records and other tangible media of expression of whatever nature however and wherever created, produced or stored (manually, mechanically, electronically or otherwise), including without limitation all versions whether draft or final, all annotated or nonconforming or other copies, electronic mail ("e-mail"), instant messages, text messages, Blackberry or other wireless device messages, voicemail, calendars, date books, appointment books, diaries, books, papers, files, notes, confirmations, accounts statements, correspondence, memoranda, reports, records, journals, registers, analyses, code (e.g., C/C++/C#, SQL, JavaScript,), algorithms, code repositories (e.g. GitHub), commit messages, audit logs, data or databases (e.g., Oracle, postgres or other SQL or non-SQL systems), plans, manuals, policies, telegrams, faxes, telexes, wires, telephone logs, telephone messages, message slips, minutes, notes or records or transcriptions of conversations or Communications or meetings, tape recordings, videotapes, disks, and other electronic media, microfilm, microfiche, storage devices, press releases, contracts, agreements, notices and summaries. Any non-identical version of a Document constitutes a separate Document within this definition, including without limitation drafts or copies bearing any notation, edit, comment, marginalia, underscoring, highlighting, marking, commit messages, or any other alteration of any kind resulting in any difference between two or more otherwise identical Documents. In the case of Documents bearing any notation or other marking made by highlighting ink, the term Document means the original version bearing the highlighting ink, which original must be produced as opposed to any copy thereof.

2

10.    "Entity" means without limitation any corporation, company, limited liability company or corporation, partnership, limited partnership, association, or other firm or similar body, or any unit, division, agency, department, or similar subdivision thereof.

11.    "Identify" or "Identity," as applied to any Document means the provision in writing of information sufficiently particular to enable the Attorney General to request the Document's production through CID or otherwise, including but not limited to:  (a) Document type (letter, memo, etc.); (b) Document subject matter; (c) Document date; and (d) Document author(s), addressee(s) and recipient(s).  In lieu of identifying a Document, the Attorney General will accept production of the Document, together with designation of the Document's Custodian, and identification of each Person You believe to have received a copy of the Document.

12.    "Identify" or "Identity," as applied to any Entity, means the provision in writing of such Entity's legal name, any d/b/a, former, or other names, any parent, subsidiary, officers, employees, or agents thereof, and any address(es) and any telephone number(s) thereof.

13.    "Identify" or "Identity," as applied to any natural person, means and includes the provision in writing of the natural person's name, title(s), any aliases, place(s) and dates of employment, telephone number(s), e-mail address(es), mailing addresses and physical address(es).

14.    "Person" means any natural person, or any Entity.

15.    "Sent" or "received" as used herein means, in addition to their usual meanings, the transmittal or reception of a Document by physical, electronic or other delivery, whether by direct or indirect means.

16.    The use of the singular form of any word used herein shall include the plural and vice versa.  The use of any tense of any verb includes all other tenses of the verb.

## B.  Particular Definitions

17.    "Respondent," "You," "Your" or "WinRed" means WinRed, Inc. and any of its predecessors, successors, present or former parents, subsidiaries, or affiliates, whether direct or indirect; and all directors, officers, partners, employees, agents, contractors, consultants, representatives, and attorneys of the foregoing, or any other Persons associated with or acting on behalf of the foregoing, or acting on behalf of any predecessors, successors, or affiliates of the foregoing.

18.    "Connecticut donor" means any resident of Connecticut who contributes money to any Person or Entity (including any political committee, political party, or candidate for federal, state or local election) through WinRed.

**C. Instructions**

1. <u>Preservation of Relevant Documents and Information; Spoliation.</u> You are reminded of Your obligations under law to preserve Documents and information relevant or potentially relevant to this CID from destruction or loss, and of the consequences of, and penalties available for, spoliation of evidence. No agreement, written or otherwise, purporting to modify, limit or otherwise vary the terms of this CID, shall be construed in any way to narrow, qualify, eliminate or otherwise diminish Your aforementioned preservation obligations. Nor shall You act, in reliance upon any such agreement or otherwise, in any manner inconsistent with Your preservation obligations under law. No agreement purporting to modify, limit or otherwise vary Your preservation obligations under law shall be construed as in any way narrowing, qualifying, eliminating or otherwise diminishing such aforementioned preservation obligations, nor shall You act in reliance upon any such agreement, unless an Assistant Attorney General confirms or acknowledges such agreement in writing, or makes such agreement a matter of record in open court.

2. <u>Possession, Custody, and Control.</u> The CID calls for all responsive Documents or information in Your possession, custody or control. This includes, without limitation, Documents or information possessed or held by any of Your officers, directors, employees, agents, representatives, divisions, affiliates, subsidiaries or Persons from whom You could request Documents or information. If Documents or information responsive to a request in this CID are in Your control, but not in Your possession or custody, You shall promptly Identify the Person with possession or custody.

3. <u>Documents No Longer in Your Possession.</u> If any Document requested herein was formerly in Your possession, custody or control but is no longer available, or no longer exists, You shall submit a statement in writing under oath that: (a) describes in detail the nature of such Document and its contents; (b) Identifies the Person(s) who prepared such Document and its contents; (c) Identifies all Persons who have seen or had possession of such Document; (d) specifies the date(s) on which such Document was prepared, transmitted or received; (e) specifies the date(s) on which such Document became unavailable; (f) specifies the reason why such Document is unavailable, including without limitation whether it was misplaced, lost, destroyed or transferred; and if such Document has been destroyed or transferred, the conditions of and reasons for such destruction or transfer and the Identity of the Person(s) requesting and performing such destruction or transfer; and (g) Identifies all Persons with knowledge of any portion of the contents of the Document.

4. <u>No Documents Responsive to CID Requests.</u> If there are no Documents responsive to any particular CID request, You shall so state in writing under oath in the Affidavit of Compliance attached hereto, identifying the paragraph number(s) of the CID request concerned.

5.      <u>Format of Production.</u>  You shall produce Documents and information responsive to this CID in the format requested by the Connecticut Office of the Attorney General.  Productions in electronic format shall meet the specifications set out in Attachments 1 and 2 unless otherwise specified and agreed to by the Office of Attorney General.

6.      <u>Existing Organization of Documents to be Preserved.</u>  Regardless of whether a production is in electronic or paper format, each Document shall be produced in the same form, sequence, organization or other order or layout in which it was maintained before production, including but not limited to production of any Document or other material indicating filing or other organization.  Such production shall include without limitation any file folder, file jacket, cover or similar organizational material, as well as any folder bearing any title or legend that contains no Document.  Likewise, all Documents that are physically attached to each other in Your files shall remain so attached in any production; or if such production is electronic, shall be accompanied by notation or information sufficient to indicate clearly such physical attachment.

7.      <u>Manner of Compliance – Custodians/Search Terms/Technology-Assisted Review.</u>  Prior consultation with the Office of the Attorney General is required concerning selection of custodians for document searches (whether electronic or otherwise) or for use of search term filters, predictive coding or other forms of technology-assisted review.  The Office of the Attorney General reserves the right to approve, disapprove, modify or supplement any proposed list of custodians, search terms, and/or review methodology.  The selection or use of custodians, search term filters, and/or technology-assisted review in no way relieves You of Your obligation to fully respond to these requests for Documents or information.

8.      <u>Document Numbering.</u>  All Documents responsive to this CID, regardless of whether produced or withheld on ground of privilege or other legal doctrine, and regardless of whether production is in electronic or paper format, shall be numbered in the lower right corner of each page of such Document, without disrupting or altering the form, sequence, organization or other order or layout in which such Documents were maintained before production.  Such number shall comprise a prefix containing the producing Person's name or an abbreviation thereof, followed by a unique, sequential, identifying document control number.

9.      <u>Privilege Placeholders.</u>  For each Document withheld from production on ground of privilege or other legal doctrine, regardless of whether a production is electronic or in hard copy, You shall insert one or more placeholder page(s) in the production bearing the same document control number(s) borne by the Document withheld, in the sequential place(s) originally occupied by the Document before it was removed from the production.

10.     <u>Privilege.</u>  If You withhold or redact any Document responsive to this CID on ground of privilege or other legal doctrine, You shall submit with the Documents produced a statement in writing under oath, stating:  (a) the document control

number(s) of the Document withheld or redacted; (b) the type of Document; (c) the date of the Document; (d) the author(s) and recipient(s) of the Document; (e) the general subject matter of the Document; and (f) the legal ground for withholding or redacting the Document. If the legal ground for withholding or redacting the Document is attorney-client privilege, You shall indicate the name of the attorney(s) whose legal advice is sought or provided in the Document.

11. <u>Your Production Instructions to be Produced.</u> You shall produce a copy of all written or otherwise recorded instructions prepared by You concerning the steps taken to respond to this CID. For any unrecorded instructions given, You shall provide a written statement under oath from the Person(s) who gave such instructions that details the specific content of the instructions and any Person(s) to whom the instructions were given.

12. <u>Cover Letter, Index, and Identifying Information.</u> Accompanying any production(s) made pursuant to this CID, You shall include a cover letter that shall at a minimum provide an index containing the following: (a) a description of the type and content of each Document produced therewith; (b) the paragraph number(s) of the CID request(s) to which each such Document is responsive; (c) the Identity of the Custodian(s) of each such Document; and (d) the document control number(s) of each such Document. As further set forth in Attachment 2, information must also be included in the metadata and load files of each production concerning the identity of each Document's custodian, as well as information identifying the particular Document requests and/or information to which each document is responsive.

13. <u>Affidavit of Compliance.</u> A copy of the Affidavit of Compliance provided herewith shall be completed and executed by all natural persons supervising or participating in compliance with this CID, and You shall submit such executed Affidavit(s) of Compliance with Your response to this CID.

14. <u>Identification of Persons Preparing Production.</u> In a schedule attached to the Affidavit of Compliance provided herewith, You shall Identify the natural person(s) who prepared or assembled any productions or responses to this CID. You shall further Identify the natural person(s) under whose personal supervision the preparation and assembly of productions and responses to this CID occurred. You shall further Identify all other natural person(s) able competently to testify: (a) that such productions and responses are complete and correct to the best of such person's knowledge and belief; and (b) that any Documents produced are authentic, genuine and what they purport to be.

15. <u>Continuing Obligation to Produce.</u> This CID imposes a continuing obligation to produce the Documents and information requested. Documents located or created, and information learned, acquired or created, at any time after Your response is due shall be promptly produced at the place specified in this CID.

16.     <u>No Oral Modifications.</u>  No agreement purporting to modify, limit or otherwise vary this CID shall be valid or binding, and You shall not act in reliance upon any such agreement, unless an Assistant Attorney General confirms or acknowledges such agreement in writing, or makes such agreement a matter of record in open court.

17.     <u>Time Period.</u>  Unless otherwise specified, the time period covered by this CID shall be from January 1, 2019 through the present.

### D.  Documents to be Produced

1.  Documents (such as an organizational chart) sufficient to Identify:
    a.  All corporations, LLCs and other entities affiliated with WinRed;
    b.  All Persons and Entities with an ownership interest in WinRed (including a description of the nature and extent of such ownership interest); and
    c.  All officers of WinRed.

2.  Documents sufficient to Identify all political committees, parties and candidates (and any other clients) for whom WinRed has used pre-checked recurring or additional donation boxes in a fundraising solicitation or donation page.

3.  Screen shots (or comparable documents representing WinRed's website as it appears to donors and other users) for all web pages that WinRed has hosted or used to solicit donations that included a pre-checked box for recurring or additional donations, including all disclosures made to potential donors about recurring donations and any other text and images that accompany the pre-checked boxes.  For each such web page, include screen shots or comparable documents documenting how or when the interface, wording, or format changed over time for that page.

4.  All complaints received by WinRed from Connecticut donors Concerning recurring or additional donations, as well as Your responses to those complaints.

5.  Documents sufficient to identify all refunds provided by WinRed to Connecticut donors, including for each refund:
    a.  Whether the donor made the refunded contribution through a web page that used pre-checked boxes;
    b.  The name of the political committee, party or candidate who received the donation;
    c.  The total amount of the donation made by the donor;
    d.  The total amount returned to each donor; and
    e.  Any fees retained by WinRed when making the refund.

6.   WinRed's written policies and procedures Concerning:
    a.  The use of pre-checked box option for political fundraising;
    b.  Cancelling or refunding donations made through pre-checked boxes;
    c.  Making refunds in response to donor complaints; and
    d.  Retention of fees when making refunds to donors.

7.  All Communications Concerning recurring donations, including any representations about the use of pre-checked boxes or other methods for securing recurring donations,

the disclosures made to donors about the use of recurring donations, and any representations about WinRed's ability to secure recurring donations for political committees, parties or candidates.

8. All Documents Concerning analyses, studies and reports Concerning the effectiveness, impact and/or use of pre-checked donation boxes, including but not limited to A/B testing, user interface testing, user stories, or analyses of the content and layout of solicitations using pre-checked donation boxes.

9. Documents showing the conversion rate of website donors who made recurring donations in the absence of a pre-checked recurring donation box as compared to when a pre-checked recurring donation box was added.

HEREOF FAIL NOT UNDER PENALTY OF LAW.

Dated at Hartford, Connecticut, this 14th day of July, 2021.

_____
MICHELLE SEAGULL
COMMISSIONER OF CONSUMER PROTECTION

**ATTACHMENT 1**
**Electronic Document Production Specifications**

Unless otherwise specified and agreed to by the Office of Attorney General, all responsive documents must be produced in LexisNexis® Concordance® format in accordance with the following instructions. Any questions regarding electronic document production should be directed to the Assistant Attorney General whose telephone number appears on the CID.

1.      Concordance Production Components. A Concordance production consists of the following component files, which must be produced in accordance with the specifications set forth below in Section 7.

      A.      ***Metadata Load File.*** A delimited text file that lists in columnar format the required metadata for each produced document.

      B.      ***Extracted or OCR Text Files.*** Document-level extracted text for each produced document or document-level optical character recognition ("OCR") text where extracted text is not available.

      C.      ***Single-Page Image Files.*** Individual petrified page images of the produced documents in tagged image format ("TIF"), with page-level Bates number endorsements.

      D.      ***Opticon Load File.*** A delimited text file that lists the single-page TIF files for each produced document and defines (i) the relative location of the TIF files on the production media and (ii) each document break.

      E.      ***Native Files.*** Native format versions of non-printable or non–print friendly produced documents.

2.      Production Folder Structure. The production must be organized according to the following standard folder structure:
- data\ (contains production load files)
- images\ (contains single-page TIF files, with subfolder organization)
  \0001, \0002, \0003…
- native_files\ (contains native files, with subfolder organization)
  \0001, \0002, \0003…
- text\ (contains text files, with subfolder organization)
  \0001, \0002, \0003…

3.      De-Duplication. You must perform global de-duplication of stand-alone documents and email families against any prior productions pursuant to this or previously related subpoenas.

4.      Paper or Scanned Documents. Documents that exist only in paper format must be scanned to single-page TIF files and OCR'd. The resulting electronic files should

be pursued in Concordance format pursuant to these instructions. You must contact the Assistant Attorney General whose telephone number appears on the CID to discuss (i) any documents that cannot be scanned, and (ii) how information for scanned documents should be represented in the metadata load file.

5.    Structured Data. Before producing structured data, including but not limited to relational databases, transactional data, and xml pages, you must first speak to the Assistant Attorney General whose telephone number appears on the CID. Structured data is data that has a defined length and format and includes, but is not limited to, relational databases, graphical databases, JSON files, or xml/html pages.

A.    Relational Databases

1.    Database tables should be provided in CSV or other delimited machine-readable, non-proprietary format, with each table in a separate data file. The preferred delimiter is a vertical bar "|". If after speaking with the Assistant Attorney General and it is determined that the data cannot be exported from a proprietary database, then the data can be produced in the proprietary format so long as the Office of the Attorney General is given sufficient access to that data.

2.    Each database must have an accompanying Data Dictionary.

3.    Dates and numbers must be clearly and consistently formatted and, where relevant, units of measure should be explained in the Data Dictionary.

4.    Records must contain clear, unique identifiers, and the Data Dictionary must include explanations of how the files and records relate to one another.

5.    Each data file must also have an accompanying summary file that provides total row counts for the entire dataset and total row counts.

B.    Compression

1.    If Documents are provided in a compressed archive, only standard lossless compression methods (e.g., gzip, bzip2, and ZIP) shall be used. Media files should be provided in their original file format, with metadata preserved and no additional lossy encoding applied.

6.     <u>Media and Encryption</u>.  All documents must be produced on hard-drive media. After consultation with the Assistant Attorney General, Documents may also be produced over Connecticut's secure file transfer protocol (SFTP) or a pre-approved cloud-based platform (e.g. Amazon Web Services S3 bucket). All production media must be protected with a strong, randomly-generated password containing at least 16 alphanumeric characters and encrypted using Advanced Encryption Standard with 256-bit key length (AES-256). Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately from the media.

7.     <u>Production File Requirements</u>.

   A.     ***Metadata Load File***
   - Required file format:
     - ASCII or UTF-8
     - Windows formatted CR + LF end of line characters, including full CR + LF on last record in file.
     - .dat file extension
     - Field delimiter: (ASCII decimal character 20)
     - Text Qualifier: þ (ASCII decimal character 254).  Date and pure numeric value fields do not require qualifiers.
     - Multiple value field delimiter: ; (ASCII decimal character 59)
   - The first line of the metadata load file must list all included fields.  All required fields are listed in Attachment 2.
   - Fields with no values must be represented by empty columns maintaining delimiters and qualifiers.
   - ***Note:*** All documents must have page-level Bates numbering (except documents produced only in native format, which must be assigned a document-level Bates number).  The metadata load file must list the beginning and ending Bates numbers (BEGDOC and ENDDOC) for each document.  For document families, including but not limited to emails and attachments, compound documents, and uncompressed file containers, the metadata load file must also list the Bates range of the entire document family (ATTACHRANGE), beginning with the first Bates number (BEGDOC) of the "parent" document and ending with the last Bates number (ENDDOC) assigned to the last "child" in the document family.
   - Date and Time metadata must be provided in separate columns.
   - Accepted date formats:
     - mm/dd/yyyy
     - yyyy/mm/dd
     - yyyymmdd
   - Accepted time formats:
     - hh:mm:ss (if not in 24-hour format, you must indicate am/pm)
     - hh:mm:ss:mmm

3

B.    ***Extracted or OCR Text Files***
- You must produce individual document-level text files containing the full extracted text for each produced document.
- When extracted text is not available (for instance, for image-only documents) you must provide individual document-level text files containing the document's full OCR text.
- The filename for each text file must match the document's beginning Bates number (BEGDOC) listed in the metadata load file.
- Text files must be divided into subfolders containing no more than 500 to 1000 files.

C.    ***Single-Page Image Files (Petrified Page Images)***
- Where possible, all produced documents must be converted into single-page tagged image format ("TIF") files. See Section 7.E below for instructions on producing native versions of documents you are unable to convert.
- Image documents that exist only in non-TIF formats must be converted into TIF files. The original image format must be produced as a native file as described in Section 7.E below.
- For documents produced only in native format, you must provide a TIF placeholder that states "Document produced only in native format."
- Each single-page TIF file must be endorsed with a unique Bates number.
- The filename for each single-page TIF file must match the unique page-level Bates number (or document-level Bates number for documents produced only in native format).
- Required image file format:
  - CCITT Group 4 compression
  - 2-Bit black and white
  - 300 dpi
  - Either .tif or .tiff file extension.
- TIF files must be divided into subfolders containing no more than 500 to 1000 files. Where possible documents should not span multiple subfolders.

D.    ***Opticon Load File***
- Required file format:
  - ASCII
  - Windows formatted CR + LF end of line characters
  - Field delimiter: , (ASCII decimal character 44)
  - No Text Qualifier
  - .opt file extension
- The comma-delimited Opticon load file must contain the following seven fields (as indicated below, values for certain fields may be left blank):

- o ALIAS or IMAGEKEY – the unique Bates number assigned to each page of the production.
- o VOLUME – this value is optional and may be left blank.
- o RELATIVE PATH – the filepath to each single-page image file on the production media.
- o DOCUMENT BREAK – defines the first page of a document. The only possible values for this field are "Y" or blank.
- o FOLDER BREAK – defines the first page of a folder. The only possible values for this field are "Y" or blank.
- o BOX BREAK – defines the first page of a box. The only possible values for this field are "Y" or blank.
- o PAGE COUNT – this value is optional and may be left blank.
- **Example:**
  ABC00001,,IMAGES\0001\ABC00001.tif,Y,,,2
  ABC00002,,IMAGES\0001\ABC00002.tif,,,,
  ABC00003,,IMAGES\0002\ABC00003.tif,Y,,,1
  ABC00004,,IMAGES\0002\ABC00004.tif,Y,,,1

E.  ***Native Files***
- Non-printable or non–print friendly documents (including but not limited to spreadsheets, audio files, video files and documents for which color has significance to document fidelity) must be produced in their native format.
- The filename of each native file must match the document's beginning Bates number (BEGDOC) in the metadata load file and retain the original file extension.
- For documents produced only in native format, you must assign a single document-level Bates number and provide an image file placeholder that states "Document produced only in native format."
- The relative paths to all native files on the production media must be listed in the NATIVEFILE field of the metadata load file.
- Native files that are password-protected must be decrypted prior to conversion and produced in decrypted form. In cases where this cannot be achieved the document's password must be listed in the metadata load file. The password should be placed in the COMMENTS field with the format Password: <PASSWORD>.
- You may be required to supply a software license for proprietary documents produced only in native format.

**ATTACHMENT 2**
**Required Fields for Metadata Load File**

| FIELD NAME | FIELD DESCRIPTION | FIELD VALUE EXAMPLE[1] |
|---|---|---|
| DOCID | Unique document reference (can be used for de-duplication). | ABC0001 or ###.######.### |
| BEGDOC | Bates number assigned to the first page of the document. | ABC0001 |
| ENDDOC | Bates number assigned to the last page of the document. | ABC0002 |
| BEGATTACH | Bates number assigned to the first page of the parent document in a document family (*i.e.*, should be the same as BEGDOC of the parent document, or PARENTDOC). | ABC0001 |
| ENDATTACH | Bates number assigned to the last page of the last child document in a family (*i.e.*, should be the same as ENDDOC of the last child document). | ABC0008 |
| ATTACHRANGE | Bates range of entire document family. | ABC0001 - ABC0008 |
| PARENTDOC | BEGDOC of parent document. | ABC0001 |
| CHILDDOCS | List of BEGDOCs of all child documents, delimited by ";" when field has multiple values. | ABC0002; ABC0003; ABC0004… |
| DOCREQ | List of particular Requests for Documents to be Produced in the CID | 1; 2; 3 . . . |
| INTERROG | List of particular [Requests for Information] [interrogatories] in the CID | 1; 2; 3 . . . |
| COMMENTS | Additional document comments, such as passwords for encrypted files. | |

---

[1] Examples represent possible values and not required format unless the field format is specified in Attachment 1.

| | | |
|---|---|---|
| NATIVEFILE | Relative file path of the native file on the production media. | .\Native_File\Folder\...\BEGDOC.ext |
| SOURCE | For scanned paper records this should be a description of the physical location of the original paper record. For loose electronic files this should be the name of the file server or workstation where the files were gathered. | Company Name, Department Name, Location, Box Number… |
| CUSTODIAN | Owner of the document or file. | Firstname Lastname, Lastname, Firstname, User Name; Company Name, Department Name... |
| FROM | Sender of the email. | Firstname Lastname < FLastname @domain > |
| TO | All to: members or recipients, delimited by ";" when field has multiple values. | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; … |
| CC | All cc: members, delimited by ";" when field has multiple values. | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; … |
| BCC | All bcc: members, delimited by ";" when field has multiple values | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; … |
| SUBJECT | Subject line of the email. | |
| DATERCVD | Date that an email was received. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| TIMERCVD | Time that an email was received. | hh:mm:ss AM/PM or hh:mm:ss |
| DATESENT | Date that an email was sent. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |

7

| | | |
|---|---|---|
| TIMESENT | Time that an email was sent. | hh:mm:ss AM/PM or hh:mm:ss |
| CALBEGDATE | Date that a meeting begins. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| CALBEGTIME | Time that a meeting begins. | hh:mm:ss AM/PM or hh:mm:ss |
| CALENDDATE | Date that a meeting ends. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| CALENDTIME | Time that a meeting ends. | hh:mm:ss AM/PM or hh:mm:ss |
| CALENDARDUR | Duration of a meeting in hours. | 0.75, 1.5… |
| ATTACHMENTS | List of filenames of all attachments, delimited by ";" when field has multiple values. | AttachmentFileName.; AttachmentFileName.docx; AttachmentFileName.pdf; … |
| NUMATTACH | Number of attachments. | 1, 2, 3, 4…. |
| RECORDTYPE | General type of record. | IMAGE; LOOSE E-MAIL; E-MAIL; E-DOC; IMAGE ATTACHMENT; LOOSE E-MAIL ATTACHMENT; E-MAIL ATTACHMENT; E-DOC ATTACHMENT |
| FOLDERLOC | Original folder path of the produced document. | Drive:\Folder\...\...\ |
| FILENAME | Original filename of the produced document. | Filename.ext |
| DOCEXT | Original file extension. | html, xls, pdf |
| DOCTYPE | Name of the program that created the produced document. | Adobe Acrobat, Microsoft Word, Microsoft Excel, Corel WordPerfect… |
| TITLE | Document title (if entered). | |
| AUTHOR | Name of the document author. | Firstname Lastname; Lastname, First Name; FLastname |
| REVISION | Number of revisions to a document. | 18 |

| DATECREATED | Date that a document was created. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
|---|---|---|
| TIMECREATED | Time that a document was created. | hh:mm:ss AM/PM or hh:mm:ss |
| DATEMOD | Date that a document was last modified. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| TIMEMOD | Time that a document was last modified. | hh:mm:ss AM/PM or hh:mm:ss |
| FILESIZE | Original file size in bytes. | 128, 512, 1024… |
| PGCOUNT | Number of pages per document. | 1, 2, 10, 100… |
| IMPORTANCE | Email priority level if set. | Low, Normal, High |
| TIFFSTATUS | Generated by the Law Pre-discovery production tool (leave blank if inapplicable). | Y, C, E, W, N, P |
| DUPSTATUS | Generated by the Law Pre-discovery production tool (leave blank if inapplicable). | P |
| MD5HASH | MD5 hash value computed from native file (a/k/a file fingerprint). | BC1C5CA6C1945179FE E144F25F51087B |
| SHA1HASH | SHA1 hash value | B68F4F57223CA7DA358 4BAD7ECF111B8044F86 31 |
| MSGINDEX | Email message ID | |

## AFFIDAVIT OF COMPLIANCE WITH CIVIL INVESTIGATIVE DEMAND

State of _____
County of _____   }

I, _____, being duly sworn, state as follows:

1.  I am employed by Respondent in the position of _____ _____;

2.  Respondent's productions and responses to the Civil Investigative Demand issued by the Commissioner of Consumer Protection of the State of Connecticut, dated __ _____, 20_____ (the "CID") were prepared and assembled under my personal supervision;

3.  I made or caused to be made a diligent, complete and comprehensive search for all Documents and information requested by the CID, in full accordance with the instructions and definitions set forth in the CID;

4.  Respondent's productions and responses to the CID are complete and correct to the best of my knowledge and belief;

5.  No Documents or information responsive to the CID have been withheld from Respondent's production and response, other than responsive Documents or information withheld on the basis of a legal privilege or doctrine;

6.  All responsive Documents or information withheld on the basis of a legal privilege or doctrine have been identified on a privilege log composed and produced in accordance with the instructions in the CID;

7.  The Documents contained in Respondent's productions and responses to the CID are authentic, genuine and what they purport to be;

8.  Attached is a true and accurate record of all persons who prepared and assembled any productions and responses to the CID, all persons under whose personal supervision the preparation and assembly of productions and responses to the CID occurred, and all persons able competently to testify:  (a) that such productions and responses are complete and correct to the best of such person's knowledge and belief; and (b) that any Documents produced are authentic, genuine and what they purport to be; and

9.      Attached is a true and accurate statement of those requests under the CID as to which no responsive Documents were located in the course of the aforementioned search.


_____          _____
Signature of Affiant                                              Date


_____
Printed Name of Affiant




*       *       *



Subscribed and sworn to before me this _____ day of _____, 20___.


_____, Notary Public


My commission expires: _____

# EXHIBIT 2

| | | |
|---|---|---|
| IN RE: | * | IN THE CONSUMER |
| WINRED, INC. | * | PROTECTION DIVISION |
| | * | THE OFFICE OF |
| | * | THE ATTORNEY GENERAL |
| | * | OF MARYLAND |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## ADMINISTRATIVE SUBPOENA

ISSUED TO:      WinRed, Inc.
1776 Wilson Blvd.
Arlington, VA 22209

SERVED ON:     WinRed, Inc.
c/o North Rock Reports LLC (as Registered Agent)
15405 John Marshall Hwy
Haymarket, VA 20169-2706

**YOU ARE HEREBY COMMANDED** by the authority of the State of Maryland and the Attorney General of Maryland, pursuant to the provisions of Md. Code Ann., Com. Law, § 13-405(a), to produce on or before August 16, 2021, the documents described below to the attention of:

Christopher Waldt, Chief Investigator
Office of the Attorney General
Consumer Protection Division, 16th Floor
200 St. Paul Place, Baltimore, Maryland 21202.

## DEFINITIONS AND INSTRUCTIONS

1.     "**Document**" means the original (or duplicate, identical copies when originals are not available), and any non-identical copies (whether different from the original because of notes made on such copies or otherwise) of writings or recordings of every kind and description whether inscribed by hand or by mechanical, facsimile, electronic, magnetic, digital, microfilm, photographic or other means, as well as phonic or visual reproductions of oral statements, conversations, and including, but not limited to, any manual, book, pamphlet, periodical, letter, report, memorandum, notation, message, telegram, cable, facsimile, record, study, working paper, accounting paper, telephone log, teletype message, chart, graph, index, tape, minutes, computer printout, contract, lease, invoice, record of purchase or sale, correspondence, electronic

1

or other transcription of taping of telephone or personal conversations or conferences, or any and all other written, printed, typed, punched, taped, filmed or graphic matter however produced or reproduced and any electronic, mechanical, computer, e-mail, or Internet records or representations of any kind (including, without limitation, tapes, cassettes, discs, recordings, and computer and electronic memories). "**Document**" also includes the file, folder tabs and/or containers and labels appended thereto associated with each such aforesaid original and/or copy.

2.      "**Communication**" means any conversation, discussion, letter, email, memorandum, meeting, note or other transmittal of information or message, whether transmitted in writing, orally, electronically or by any other means, and shall include any document that abstracts, digests, transcribes, records or reflects any of the foregoing.

3.      "**You**", "**your**", the "**Company**", and "**WinRed**" as used herein means WinRed, Inc. and includes any of its parent entities, subsidiaries, affiliated entities, predecessor entities, successor entities, franchisees, agents, brokers, marketers, contractors, representatives, and all other business entities or individuals acting, or purporting to act, on its behalf.

4.      The term "**any**" shall be construed as synonymous with "every," and "all" shall be all-inclusive.

5.      The terms "**and**" and "**or**" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

6.      "**Maryland donor**" means any resident of the State of Maryland who contributes money to any Person (including any political committee, political party, or candidate for federal, state or local election) through WinRed.

7.      "**Person**" means any individual or corporation, partnership, trust, incorporated or unincorporated, association, joint venture, limited liability company, joint stock company, government (or an agency or subdivision thereof) or other entity of any kind.

## <u>INSTRUCTIONS</u>

1.      <u>Documents No Longer in Possession of Respondent/Destroyed Documents</u>:    If any responsive document was, but no longer is, in your possession, custody or control, produce a description of each such document.  The description shall include the following:

a.      the name of each author, sender, creator, and initiator of such document;
b.      the name of each recipient, addressee, or party for whom such document was intended;
c.      the date the document was created;
d.      the date(s) the document was in use;
e.      a detailed description of the content of the document;
f.      the reason it is no longer in your possession, custody or control; and

2

g.    the document's present whereabouts.

If the document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the document was destroyed or otherwise disposed of, and the date and manner of the disposal.

2.    <u>Organization of Responses</u>:  The documents produced shall be identified and segregated to correspond with the number and subsection of the request.  Identical copies of responsive documents need not be produced.  However, any copy of a document that differs in any manner, including but not limited to the presence of handwritten notations, shall be produced.

3.    <u>Electronic Documents</u>:  If any responsive document is available in electronic format, the document shall be provided in electronic format in addition to hard copy.

4.    <u>Format of Electronic Documents</u>:  Produce electronic documents in a single page Tagged Image File Format (TIFF) with associated OCR text, together with industry standard Concordance load files and associated files including, but not limited to, all .dat, .opt, .txt, and .tiff files.  Preserve all metadata in the documents that are produced.  To the extent available, produce all data in an Excel format, otherwise as a Comma Separated Value text file with a .txt or .csv extension.  All documents should also be produced in their native format with reference to any associated document ID.  Such electronic records or data should be provided on generally supported storage media, including CD-readable disks and DVD-ROMs.

5.    <u>Privileged Documents</u>:  If any responsive document is withheld under any claim of privilege, provide a detailed privilege log that contains at least the following information for each document that you have withheld:

(a)    the name of each author, writer, sender, creator, or initiator of such document;
(b)    the name of each recipient, addressee, or party for whom such document was intended;
(c)    the date of such document, or an estimate thereof if no date appears on the document;
(d)    the general subject matter of the document; and
(e)    the claimed grounds for withholding the document, including, but not limited to, the nature of any claimed privilege and grounds in support thereof.

6.    <u>Duty to Supplement</u>: All document requests are continuing in nature so as to require supplementary documents if you obtain further responsive documents.

7.    <u>Duty to Preserve Documents</u>:  All documents and/or other data which relate to the subject matter or requests of this administrative subpoena must be preserved. Any destruction involving such documents must cease, even if it is your normal or routine course of business to delete or destroy such documents or data and even if you believe such documents or data are privileged or otherwise need not be produced.

3

8.   <u>Time Period</u>:   Unless otherwise specified, the applicable time period for responsive documents is January 1, 2019 to present.

9.   <u>Languages</u>:   Produce the requested documents in all languages in which they are or were made available to consumers.

## <u>DOCUMENTS TO BE PRODUCED</u>

1.   Documents sufficient to identify each person who assisted in your response, and for each such person, the number(s) of the request(s) which that person(s) assisted in your response.  In lieu of providing the requested documents, you may provide a narrative reponse providing this information.

2.   Documents sufficient to show your legal identity and organization, including, but not limited to, all articles of incorporation, articles of organization, amendments, corporate charters, corporate charter approval sheets, bylaws, articles of cancellation, and operating agreements.

3.   Documents sufficient to show all trade names under which you have done business.  In lieu of providing the requested documents, you may provide a narrative response providing this information.

4.   Documents sufficient to show the organizational structure of the Company, and each of its parents, affiliates, and/or subsidiaries, including organizational charts and documents sufficient to show the principal functions of each entity.  In lieu of providing the requested documents, you may provide a narrative response providing this information.

5.   Documents sufficient to identify all politicial committes, parties and candidates, and any other clients, for whom WinRed has used pre-checked recurring or additional donation boxes in a fundraising solicitation or donation page.

4

6.    Screenshots (or comparable documents representing WinRed's website as it appears to donors or other users) for all web pages that WinRed has hosted or used to solicit donations that included a pre-checked box for recurring or additional donations, including all disclosures made to potential donors about recurring donations and any other text and images that accompany the pre-checked boxes.  For each such web page, include screen shots or comparable documents documenting how or when the interface, wording, or format changed over time for that page.

7.    All complaints received by WinRed from Maryland donors concerning recurring or additional donations, or unauthorized charges, as well as your responses to those complaints.

8.    Documents sufficient to identify all refunds provided by WinRed to Maryland donors, including for each refund:

    a.    Whether the donor made the refunded contribution through a web page that used pre-checked boxes;
    b.    The name of the political committee, party or candidate who received the donation;
    c.    The total amount of the donation made by the donor;
    d.    The total amount returned to each donor; and
    e.    Any fees retained by WinRed when making the refund.

9.    WinRed's written policies and procedures concerning:

    a.    The use of a pre-checked box option for political fundraising;
    b.    Cancelling or refunding donations made through pre-checked boxes;
    c.    Making refunds in response to donor complaints; and
    d.    Retention of fees when making refunds to donors.

10.    All communications concerning recurring donations, including any representations about the use of pre-checked boxes or other methods for securing recurring donations, the disclosures made to donors about the use of recurring donations, and any representations about WinRed's ability to secure recurring donations for political committees,

parties or candidates.

11.    All documents concerning analyses, studies and reports concerning the effectiveness, impact and/or use of pre-checked donation boxes, including but not limited to A/B testing, user interface testing, user stories, or analyses of the content and layout of solicitations using pre-checked donation boxes.

12.    Documents showing the conversion rate of website donors who made recurring donations in the absence of a pre-checked recurring donation box as compared to when a pre-checked recurring donation box was added.

THE CONSUMER PROTECTION DIVISION

Dated:  7/16/21         By:  _William D Gruhn_

William D. Gruhn
Chief, Consumer Protection Division

# EXHIBIT 3

**STATE OF MINNESOTA**
**OFFICE OF THE ATTORNEY GENERAL**
**CIVIL INVESTIGATIVE DEMAND**

In the Matter of WinRed, Inc.

DEMAND FOR
ANSWERS TO INTERROGATORIES
AND REQUEST FOR DOCUMENTS

TO:    WinRed, Inc., c/o North Rock Reports LLC (as Registered Agent), 15405 John Marshall Hwy, Haymarket, VA 20169-2706.

The Attorney General of the State of Minnesota has information providing reasonable grounds to believe that WinRed, Inc. ("WinRed") violated the following Minnesota Statutes, among other potential violations, in connection with its operation: Minnesota Statutes sections 325F.69 (Prevention of Consumer Fraud); and 325D.44 (Deceptive Trade Practices). Specifically, the Attorney General has reasonable grounds to believe that WinRed has engaged in the following unlawful conduct under Minnesota law: the use of certain practices with the tendency or capacity to deceive consumers, or to create a likelihood of confusion or misunderstanding, including WinRed's use of pre-checked boxes or similar options to lock-in donations on a recurring basis. Information available to the Attorney General establishes that this practice has led to complaints from consumers and resulted in significant costs and harm to donors who did not intend or know that WinRed would continue withdrawing money from their accounts beyond their initial donation. Consumers report that they have been charged for recurring contributions that they did not intend. The Attorney General deems the documents and information requested by this Demand for Answers to Interrogatories and Request for Documents to be relevant and material to an investigation and inquiry undertaken in the public interest into the use of fraud and deceptive practices to solicit unintended donations from Minnesotans in violation of Minnesota law.

1

Pursuant to Minnesota Statutes section 8.31, and by the authority vested in the Attorney General, you are hereby required to answer in writing the Interrogatories set forth below and to deliver copies of the documents specified in the Request for Production of Documents. The interrogatory answers must be sworn upon oath and, with the requested documents, provided to Deputy Attorney General James W. Canaday at 445 Minnesota Street, Suite 1400, St. Paul, Minnesota 55101 **no later than August 16, 2021, 4:00 p.m. CDT**, or any agreed upon adjourned date or time. WinRed may provide its answers electronically by email and its documents electronically by secure file transfer to *james.canaday@ag.state.mn.us* and need not provide them in person.

If you do not comply with this Civil Investigative Demand, the Attorney General may apply to the district court for an order compelling compliance in accordance with Minnesota Statutes section 8.31, subdivision 2a.

All documents and information produced in response to this Civil Investigative Demand shall be governed by the provisions of the Minnesota Government Data Practices Act, Minnesota Statutes Chapter 13.

## INSTRUCTIONS

### A. General Definitions and Rules of Construction

1.  "All" means each and every.

2.  "Any" means any and all.

3.  "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the CID all information or Documents that might otherwise be construed to be outside of its scope.

4.  "Communication" means any conversation, discussion, letter, email, memorandum, meeting, note or other transmittal of information or message, whether transmitted in writing, orally, electronically or by any other means, and shall include any Document that abstracts, digests, transcribes, records or reflects any of the foregoing.

5.    "Concerning" means, directly or indirectly, in whole or in part, relating to, referring to, describing, evidencing or constituting.

6.    "Custodian" means any Person or Entity that, as of the date of this CID, maintained, possessed, or otherwise kept or controlled such Document.

7.    "Data Dictionary" means documentation of the organization and structure of the databases or data sets that is sufficient to allow their reasonable use by the Office of the Attorney General, including, for each table of information: (a) the size including the total number of records and file size (compressed and uncompressed) of the table; (b) a general description; (c) a list of field names; (d) a definition for each field as it is used by the Company; (e) definitions of all codes and acronyms that appear as field values; (f) the format (including variable type and length), total record counts, null value counts, and total unique record counts of each field; (g) the fields that are primary keys for the purpose of identifying a unique observation; and (h) the fields that are foreign keys for the purpose of joining tables.

8.    "Document" is used herein in the broadest sense of the term and means all records and other tangible media of expression of whatever nature however and wherever created, produced or stored (manually, mechanically, electronically or otherwise), including without limitation all versions whether draft or final, all annotated or nonconforming or other copies, electronic mail ("e-mail"), instant messages, text messages, Blackberry or other wireless device messages, voicemail, calendars, date books, appointment books, diaries, books, papers, files, notes, confirmations, accounts statements, correspondence, memoranda, reports, records, journals, registers, analyses, code (e.g., C/C++/C#, SQL, JavaScript,), algorithms, code repositories (e.g. GitHub), commit messages, audit logs, data or databases (e.g., Oracle, PostgreSQL or other SQL or non-SQL systems), plans, manuals, policies, telegrams, faxes, telexes, wires, telephone logs, telephone messages, message slips, minutes, notes or records or transcriptions of conversations or Communications or meetings, tape recordings, videotapes, disks, and other electronic media, microfilm, microfiche, storage devices, press releases, contracts, agreements, notices and summaries. Any non-identical version of a Document constitutes a separate Document within this definition, including without limitation drafts or copies bearing any notation, edit, comment, marginalia, underscoring, highlighting, marking, commit messages, or any other alteration of any kind resulting in any difference between two or more otherwise identical Documents.  In the case of Documents bearing any notation or other marking made by highlighting ink, the term Document means the original version bearing the highlighting ink, which original must be produced as opposed to any copy thereof.

9.    "Entity" means without limitation any corporation, company, limited liability company or corporation, partnership, limited partnership, association, or other firm or similar body, or any unit, division, agency, department, or similar subdivision thereof.

10.   "Identify" or "Identity," as applied to any Document means the provision in writing of information sufficiently particular to enable the Attorney General to request the Document's production through subpoena, court order, or otherwise, including but not limited to:  (a) Document type (letter, memo, etc.); (b) Document subject matter; (c) Document date; and (d) Document author(s), addressee(s) and recipient(s).  In lieu of

identifying a Document, the Attorney General will accept production of the Document, together with designation of the Document's Custodian, and identification of each Person You believe to have received a copy of the Document.

11.    "Identify" or "Identity," as applied to any Entity, means the provision in writing of such Entity's legal name, any d/b/a, former, or other names, any parent, subsidiary, officers, employees, or agents thereof, and any address(es) and any telephone number(s) thereof.

12.    "Identify" or "Identity," as applied to any natural person, means and includes the provision in writing of the natural person's name, title(s), any aliases, place(s) and dates of employment, telephone number(s), e-mail address(es), mailing addresses and physical address(es).

13.    "Person" means any natural person, or any Entity.

14.    "Sent" or "received" as used herein means, in addition to their usual meanings, the transmittal or reception of a Document by physical, electronic or other delivery, whether by direct or indirect means.

15.    "CID" means this civil investigative demand and any schedules or attachments thereto.

16.    The use of the singular form of any word used herein shall include the plural and vice versa. The use of any tense of any verb includes all other tenses of the verb.

### B. Particular Definitions

1.    "Respondent," "You," "Your" or "WinRed" means WinRed, Inc. and any of its predecessors, successors, present or former parents, subsidiaries, or affiliates, whether direct or indirect; and all directors, officers, partners, employees, agents, contractors, consultants, representatives, and attorneys of the foregoing, or any other Persons associated with or acting on behalf of the foregoing, or acting on behalf of any predecessors, successors, or affiliates of the foregoing.

2.    "Minnesota donor" or "Minnesota donors" means any resident of Minnesota who contributes money to any Person or Entity (including any political committee, political party, or candidate for federal, state or local election) through WinRed.

### C. Instructions

1.    <u>Preservation of Relevant Documents and Information; Spoliation.</u>  You are reminded of Your obligations under law to preserve Documents and information relevant or potentially relevant to this CID from destruction or loss, and of the consequences of, and penalties available for, spoliation of evidence.  No agreement, written or otherwise, purporting to modify, limit or otherwise vary the terms of this CID, shall be construed in any way to narrow, qualify, eliminate or otherwise diminish Your aforementioned preservation obligations.  Nor shall You act, in reliance upon any such agreement or otherwise, in any manner inconsistent with Your preservation obligations under law.  No agreement

purporting to modify, limit or otherwise vary Your preservation obligations under law shall be construed as in any way narrowing, qualifying, eliminating or otherwise diminishing such aforementioned preservation obligations, nor shall You act in reliance upon any such agreement, unless a designee of the Attorney General confirms or acknowledges such agreement in writing, or makes such agreement a matter of record in open court.

2.   <u>Possession, Custody, and Control.</u>   The CID calls for all responsive Documents or information in Your possession, custody or control.  This includes, without limitation, Documents or information possessed or held by any of Your officers, directors, employees, agents, representatives, divisions, affiliates, subsidiaries or Persons from whom You could request Documents or information.  If Documents or information responsive to a request in this CID are in Your control, but not in Your possession or custody, You shall promptly Identify the Person with possession or custody.

3.   <u>Documents No Longer in Your Possession.</u>   If any Document requested herein was formerly in Your possession, custody or control but is no longer available, or no longer exists, You shall submit a statement in writing under oath that:  (a) describes in detail the nature of such Document and its contents; (b) Identifies the Person(s) who prepared such Document and its contents; (c) Identifies all Persons who have seen or had possession of such Document; (d) specifies the date(s) on which such Document was prepared, transmitted or received; (e) specifies the date(s) on which such Document became unavailable; (f) specifies the reason why such Document is unavailable, including without limitation whether it was misplaced, lost, destroyed or transferred; and if such Document has been destroyed or transferred, the conditions of and reasons for such destruction or transfer and the Identity of the Person(s) requesting and performing such destruction or transfer; and (g) Identifies all Persons with knowledge of any portion of the contents of the Document.

4.   <u>No Documents Responsive to CID Requests.</u>  If there are no Documents responsive to any particular CID request, You shall so state in writing under oath in the Affidavit of Compliance attached hereto, identifying the paragraph number(s) of the CID request concerned.

5.   <u>Format of Production.</u>  You shall produce Documents and information responsive to this CID in the format requested by the Office of the Attorney General.  Documents should be produced in accordance with the attached Electronically Stored Information Protocol.  All originals should be preserved until you receive written notice from this Office of completion of this investigation and any related matters.

6.   <u>Existing Organization of Documents to be Preserved.</u>  Regardless of whether a production is in electronic or paper format, each Document shall be produced in the same form, sequence, organization or other order or layout in which it was maintained before production, including but not limited to production of any Document or other material indicating filing or other organization.  Such production shall include without limitation any file folder, file jacket, cover or similar organizational material, as well as any folder bearing any title or legend that contains no Document.  Likewise, all Documents that are physically attached to each other in Your files shall remain so attached in any production;

or if such production is electronic, shall be accompanied by notation or information sufficient to indicate clearly such physical attachment.

7. <u>Manner of Compliance – Custodians/Search Terms/Technology-Assisted Review</u>.  Prior consultation with the Office of the Attorney General is required concerning selection of custodians for document searches (whether electronic or otherwise) or for use of search term filters, predictive coding or other forms of technology-assisted review.  The Office of the Attorney General reserves the right to approve, disapprove, modify or supplement any proposed list of custodians, search terms, and/or review methodology.  The selection or use of custodians, search term filters, and/or technology-assisted review in no way relieves You of Your obligation to fully respond to these requests for Documents or information.

8. <u>Document Numbering</u>.  All Documents responsive to this CID, regardless of whether produced or withheld on ground of privilege or other legal doctrine, and regardless of whether production is in electronic or paper format, shall be numbered in the lower right corner of each page of such Document, without disrupting or altering the form, sequence, organization or other order or layout in which such Documents were maintained before production.  Such number shall comprise a prefix containing the producing Person's name or an abbreviation thereof, followed by a unique, sequential, identifying document control number.

9. <u>Privilege Placeholders</u>.  For each Document withheld from production on ground of privilege or other legal doctrine, regardless of whether a production is electronic or in hard copy, You shall insert one or more placeholder page(s) in the production bearing the same document control number(s) borne by the Document withheld, in the sequential place(s) originally occupied by the Document before it was removed from the production.

10. <u>Privilege</u>.  If You withhold or redact any Document responsive to this CID on ground of privilege or other legal doctrine, You shall submit with the Documents produced a statement in writing under oath, stating:  (a) the document control number(s) of the Document withheld or redacted; (b) the type of Document; (c) the date of the Document; (d) the author(s) and recipient(s) of the Document; (e) the general subject matter of the Document; and (f) the legal ground for withholding or redacting the Document.  If the legal ground for withholding or redacting the Document is attorney-client privilege, You shall indicate the name of the attorney(s) whose legal advice is sought or provided in the Document.

11. <u>Your Production Instructions to be Produced</u>.  You shall produce a copy of all written or otherwise recorded instructions prepared by You concerning the steps taken to respond to this CID.  For any unrecorded instructions given, You shall provide a written statement under oath from the Person(s) who gave such instructions that details the specific content of the instructions and any Person(s) to whom the instructions were given.

12. <u>Cover Letter, Index, and Identifying Information</u>.  Accompanying any production(s) made pursuant to this CID, You shall include a cover letter that shall at a minimum provide an index containing the following:  (a) a description of the type and content of each Document produced therewith; (b) the request number(s) of the CID request(s) to which each such

Document is responsive; (c) the Identity of the Custodian(s) of each such Document; and (d) the document control number(s) of each such Document. As further set forth in Attachment 2, information must also be included in the metadata and load files of each production concerning the identity of each Document's custodian, as well as information identifying the particular Document requests and/or information to which each document is responsive.

13. <u>Affidavit of Compliance.</u> A copy of the Affidavit of Compliance provided herewith shall be completed and executed by all natural persons supervising or participating in compliance with this CID, and You shall submit such executed Affidavit(s) of Compliance with Your response to this CID.

14. <u>Identification of Persons Preparing Production.</u> In a schedule attached to the Affidavit of Compliance provided herewith, You shall Identify the natural person(s) who prepared or assembled any productions or responses to this CID. You shall further Identify the natural person(s) under whose personal supervision the preparation and assembly of productions and responses to this CID occurred. You shall further Identify all other natural person(s) able competently to testify: (a) that such productions and responses are complete and correct to the best of such person's knowledge and belief; and (b) that any Documents produced are authentic, genuine and what they purport to be.

15. <u>Continuing Obligation to Produce.</u> This CID imposes a continuing obligation to produce the Documents and information requested. Documents located or created, and information learned, acquired or created, at any time after Your response is due shall be promptly produced at the place specified in this CID.

16. <u>No Oral Modifications.</u> No agreement purporting to modify, limit or otherwise vary this CID shall be valid or binding, and You shall not act in reliance upon any such agreement, unless a designee of the Attorney General confirms or acknowledges such agreement in writing, or makes such agreement a matter of record in open court.

17. <u>Geographic references.</u> Whenever these Interrogatories or Requests for Production of Documents seek information specific to persons or activities in Minnesota that you are unable to produce separately, you should provide the information without regard to geographic limitation.

18. <u>Time Period.</u> Unless otherwise specified, the time period covered by this CID shall be from January 1, 2019 through the present.

## INTERROGATORIES

**INTERROGATORY NO. 1.**

Identify each Person who assisted in answering these Interrogatories and Document Requests.

**INTERROGATORY NO. 2.**

Identify and describe with particularity Your policies and procedures with respect to document retention.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**DOCUMENT REQUEST NO. 1.**

Produce copies of all Documents that You referenced or relied upon in answering the above interrogatories.

**DOCUMENT REQUEST NO. 2.**

Produce Documents (such as an organizational chart) sufficient to Identify:

    a.   All corporations, LLCs and other entities affiliated with WinRed;

    b.   All Persons and Entities with an ownership interest in WinRed (including a description of the nature and extent of such ownership interest); and

    c.   All officers of WinRed.

**DOCUMENT REQUEST NO. 3.**

Produce Documents sufficient to Identify all political committees, parties and candidates (and any other clients) for whom WinRed has used pre-checked recurring or additional donation boxes in a fundraising solicitation or donation page.

**DOCUMENT REQUEST NO. 4.**

Produce Documents (including screen shots or comparable Documents representing WinRed's website as it appears to donors and other users) for all web pages that WinRed has hosted or used to solicit donations that included a pre-checked box for recurring or additional donations, including all disclosures made to potential donors about recurring donations and any other text and images that accompany the pre-checked boxes. For each such web page, include screen shots or comparable Documents documenting how or when the interface, wording, or format changed over time for that page.

**DOCUMENT REQUEST NO. 5.**

Produce Documents for all complaints received by WinRed from Minnesota donors Concerning recurring or additional donations, as well as Your responses to those complaints.

**DOCUMENT REQUEST NO. 6.**

Produce Documents sufficient to Identify all refunds provided by WinRed to Minnesota donors, including for each refund:

    a.   Whether the donor made the refunded contribution through a web page that used pre-checked boxes;

    b.   The name of the political committee, party or candidate who received the donation;

    c.   The total amount of the donation made by the donor;

    d.   The total amount returned to each donor; and

    e.   Any fees retained by WinRed when making the refund.

**DOCUMENT REQUEST NO. 7.**

Produce Documents sufficient to Identify WinRed's written policies and procedures Concerning:

    a.   The use of pre-checked box option for political fundraising;

    b.   Cancelling or refunding donations made through pre-checked boxes;

    c.   Making refunds in response to donor complaints; and

    d.   Retention of fees when making refunds to donors.

**DOCUMENT REQUEST NO. 8.**

Produce All Communications Concerning recurring donations, including any representations about the use of pre-checked boxes or other methods for securing recurring donations, the disclosures made to donors about the use of recurring donations, and any representations about WinRed's ability to secure recurring donations for political committees, parties or candidates.

**DOCUMENT REQUEST NO. 9.**

Produce All Documents Concerning analyses, studies and reports Concerning the effectiveness, impact and/or use of pre-checked donation boxes, including but not limited to A/B testing, user interface testing, user stories, or analyses of the content and layout of solicitations using pre-checked donation boxes.

**DOCUMENT REQUEST NO. 10.**

Produce All Documents showing the conversion rate of website donors who made recurring donations in the absence of a pre-checked recurring donation box as compared to when a pre-checked recurring donation box was added.

Dated:  July 16, 2021                          Respectfully submitted,

                                               KEITH ELLISON
                                               Attorney General
                                               State of Minnesota


                                               JAMES W. CANADAY
                                               Deputy Attorney General
                                               Atty. Reg. No. 030234X

                                               445 Minnesota Street, Suite 1400
                                               St. Paul, Minnesota 55101-2131
                                               (651) 757-1421 (Voice)
                                               (651) 296-9663 (Fax)
                                               james.canaday@ag.state.mn.us

                                               ATTORNEYS FOR STATE OF MINNESOTA

**Electronically Stored Information Protocol**

I.   **Instructions for the Production Format of Electronically Stored Information ("ESI"):**

A.   ESI should be produced in a format consistent with loading into a document review tool, including static images, native documents, extracted text, and associated metadata identified in Paragraph (G) below.  If you are unable to produce ESI in this manner, then you must provide the information in native format with unaltered metadata.

B.   ESI should be produced as Group IV single page TIFF format files imaged at 300 dpi.  Electronic mail shall include attachments to the email and indicate whether and to whom the email was a reply or was forwarded.  Color pages will be produced as single-page JPGs.  Black and white pages will be produced in 1 bit format.  You should make diligent efforts to produce any electronically-stored spreadsheet (e.g. Microsoft Excel), presentation (e.g. Microsoft PowerPoint), other proprietary-type data in the form(s) in which the ESI is ordinarily and customarily maintained in the usual course of business or, if not reasonably usable in that form, in such other form as is reasonably usable, rather than in TIFF or portable document file (.pdf) format, with a slipsheet TIFF indicating a native document has been produced.  Also, documents that can become unwieldy when converted to TIFF should be produced in native format.

C.   Documents should be uniquely and sequentially Bates Numbered with both the Bates number and any other necessary endorsement burned into each image.  Native files endorsements must be identified on associated slip sheet and metadata load file.

D.   ESI may be produced on CD/DVD, other portable media, or via a secure file-sharing system.

E.   If the use of a native file requires proprietary software, you must inform the Minnesota Attorney General's Office of that fact.

F.   Extracted or OCR text must be provided for each document.

G.   Extracted metadata will be produced for each document in the form of a delimited .dat file, and include the following fields:

| Bates_Begin | The bates label of the first page of the document |
|---|---|
| Bates_End | The bates label of the last page of the document |
| Attach_Begin | The bates label of the first page of a family of documents (*e.g.*, email and attachment) |
| Attach_End | The bates label of the last page of a family of documents |

| | |
|---|---|
| File_Size | Size of the original file processed, regardless of whether the file is produced in native format |
| File_Extension | The file extension of the original file produced, regardless of whether the file is produced in native format |
| Sent_Date | For email, the sent date of the message |
| Sent_Time | For email, the sent time of the message |
| Date Received | For email, the date the message was received |
| Time Received | For email, the time the message was received |
| Create_Date | For e-files or attachments, the document's creation date or operating system creation date |
| Create_Time | For e-files or attachments, the document's creation time or operating system creation time |
| Modified_Date | For e-files or attachments, the document's last modified date or operating system last modified date |
| Modified_Time | For e-files or attachments, the document's last modified time or operation system last modified time |
| Author | The author of a stand-alone e-file or attachment |
| From | The sender of an email message |
| To | The recipient(s) of an email message, in a semi-colon delimited multi-value list |
| CC | The copyee(s) of an email message, in a semi-colon delimited multi-value list |
| BCC | The blind copyee(s) of an email message, in a semi-colon delimited multi-value list |
| Email Message ID | Microsoft Outlook or similar number in other message systems |
| Email Subject | Email subject |
| File Name | File Name of Native/Original file |
| Document Title | Title of native file extracted from file properties |
| Custodian | The custodian in whose file the document was found |
| Duplicate Custodian | Other custodians with same document prior to de-duplication |
| Original_Filepath | The path to the email in the mailbox or stand-alone e-file |
| MD5 | The calculated MD5 hash value of the document |
| Native_File | The file path to the location of the native file, if produced |
| Conf_Desig | The confidentiality designation, if any, for the document |
| Text_Path | The file path to the location of the text file in the production |

| Has Redactions | Yes/No if document has been redacted |
|---|---|
| Pages | Number of pages in a document |
| SHA1 Hash | Identifying value of an electronic record assigned using algorithm |

If a field contains privileged information, the field will be left blank. Reasons for withholding a document or any redactions for privilege will be recorded on a privilege log, which will be produced, upon request, in native electronic format.

H.  You should globally de-duplicate all ESI before production. Duplicate custodians will be tracked and information on duplicate custodians will be provided in the production via metadata (see paragraph (G)).

I.  Passwords for documents, files, compressed archives, and encrypted media should be provided separately either via e-mail or in a separate cover letter not included with the media.

J.  All productions must be free of computer viruses and malware.

K.  You should communicate any problems associated with producing ESI in the above format prior to the release of data to the Minnesota Attorney General's Office, to ensure the format of the production is appropriate.

## II.    Instructions for the Production Format of Hard Copy Documents:

A.  To the extent any discoverable information is preserved only in printed form, such information should be produced as Group IV single-page TIFF format files imaged at 300 DPI as set forth above.

B.  Extracted or OCR text must be provided for each document.

C.  The following metadata should be produced for each document in the form of a delimited .dat file, and include the following fields:

| Bates_Begin | The bates label of the first page of the document |
|---|---|
| Bates_End | The bates label of the last page of the document |
| Custodian | The custodian in whose file the document was found |
| Is Hard Copy | Y/N field indicating if the document is a hard copy |
| Conf_Desig | The confidentiality designation, if any, for the document |

## AFFIDAVIT OF COMPLIANCE WITH CID

State of _____
County of _____    }

I, _____, being duly sworn, state as follows:

1.    I am employed by _____ in the position of _____;

2.    _____'s productions and responses to the CID of the Attorney General of the State of Minnesota, dated _____, 20_____ (the "CID") were prepared and assembled under my personal supervision;

3.    I made or caused to be made a diligent, complete and comprehensive search for all Documents and information requested by the CID, in full accordance with the instructions and definitions set forth in the CID;

4.    _____'s productions and responses to the CID are complete and correct to the best of my knowledge and belief;

5.    No Documents or information responsive to the CID have been withheld from _____'s production and response, other than responsive Documents or information withheld on the basis of a legal privilege or doctrine;

6.    All responsive Documents or information withheld on the basis of a legal privilege or doctrine have been identified on a privilege log composed and produced in accordance with the instructions in the CID;

7.    The Documents contained in _____'s productions and responses to the CID are authentic, genuine and what they purport to be;

8.    Attached is a true and accurate record of all persons who prepared and assembled any productions and responses to the CID, all persons under whose personal supervision the preparation and assembly of productions and responses to the CID occurred, and all persons able competently to testify: (a) that such productions and responses are complete and correct to the best of such person's knowledge and belief; and (b) that any Documents produced are authentic, genuine and what they purport to be; and

9.      Attached is a true and accurate statement of those requests under the CID as to which no responsive Documents were located in the course of the aforementioned search.

_____      _____
           Signature of Affiant                               Date

_____
      Printed Name of Affiant

\*     \*     \*

Subscribed and sworn to before me this _____ day of _____, 20\_\_\_.

_____, Notary Public

My commission expires: _____

|#5013219-v1

# EXHIBIT 4



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL
**SUBPOENA DUCES TECUM**
**THE PEOPLE OF THE STATE OF NEW YORK**
<u>GREETINGS</u>

**TO**:    WinRed, Inc.
c/o North Rock Reports LLC (as Registered Agent)
15405 John Marshall Hwy
Haymarket, VA 20169-2706

**YOU ARE HEREBY COMMANDED**, pursuant to Executive Law § 63(12) and § 2302(a) of the New York Civil Practice Law and Rules, to deliver and turn over to Letitia James, the Attorney General of the State of New York, or a designated Assistant Attorney General, on ***the 16th day of August 2021, by 5 p.m***., or any agreed upon adjourned date or time, via email to the undersigned or via a secured file transfer program, all documents and information requested in the attached Schedule in accordance with the instructions and definitions contained therein.

**TAKE NOTICE** that the Attorney General deems the documents and information requested by this Subpoena to be relevant and material to an investigation and inquiry undertaken in the public interest into the use of deceptive practices to solicit unintended donations from New Yorkers in violation of N.Y. General Business Law § 349 and N.Y. Executive Law § 63(12).

**TAKE FURTHER NOTICE** that Your disobedience of this Subpoena, by failing to deliver the documents and information requested in the attached Schedule on the date, time and place stated above or on any agreed upon adjourned date or time, ***may subject You to penalties and other lawful punishment under*** § 2308 of the New York Civil Practice Law and Rules, and/or other statutes.

**WITNESS**, The Honorable Letitia James, Attorney General of the State of New York, this 16th day of July 2021.

By:                                              By:

Jane Azia                                    Mark Ladov
Bureau Chief                                 Assistant Attorney General
Consumer Frauds & Protection Bureau          Consumer Frauds & Protection Bureau
28 Liberty St., 20th Floor                   28 Liberty St., 20th Floor
New York, New York 10005                     New York, New York 10005
(212) 416-8300                               (212) 416-8622
                                             Mark.Ladov@ag.ny.gov

## <u>SCHEDULE</u>

### A. General Definitions and Rules of Construction

1. "All" means each and every.

2. "Any" means any and all.

3. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Subpoena all information or Documents that might otherwise be construed to be outside of its scope.

4. "Communication" means any conversation, discussion, letter, email, memorandum, meeting, note or other transmittal of information or message, whether transmitted in writing, orally, electronically or by any other means, and shall include any Document that abstracts, digests, transcribes, records or reflects any of the foregoing.

5. "Concerning" means, directly or indirectly, in whole or in part, relating to, referring to, describing, evidencing or constituting.

6. "Custodian" means any Person or Entity that, as of the date of this Subpoena, maintained, possessed, or otherwise kept or controlled such Document.

7. "Data Dictionary" means documentation of the organization and structure of the databases or data sets that is sufficient to allow their reasonable use by the New York Office of the Attorney General, including, for each table of information: (a) the size including the total number of records and file size (compressed and uncompressed) of the table; (b) a general description; (c) a list of field names; (d) a definition for each field as it is used by the Company; (e) definitions of all codes and acronyms that appear as field values; (f) the format (including variable type and length), total record counts, null value counts, and total unique record counts of each field; (g) the fields that are primary keys for the purpose of identifying a unique observation; and (h) the fields that are foreign keys for the purpose of joining tables.

8. "Document" is used herein in the broadest sense of the term and means all records and other tangible media of expression of whatever nature however and wherever created, produced or stored (manually, mechanically, electronically or otherwise), including without limitation all versions whether draft or final, all annotated or nonconforming or other copies, electronic mail ("e-mail"), instant messages, text messages, Blackberry or other wireless device messages, voicemail, calendars, date books, appointment books, diaries, books, papers, files, notes, confirmations, accounts statements, correspondence, memoranda, reports, records, journals, registers, analyses, code (e.g., C/C++/C#, SQL, JavaScript,), algorithms, code repositories (e.g. GitHub), commit messages, audit logs, data or databases (e.g., Oracle, postgres or other SQL or non-SQL systems), plans, manuals, policies,

telegrams, faxes, telexes, wires, telephone logs, telephone messages, message slips, minutes, notes or records or transcriptions of conversations or Communications or meetings, tape recordings, videotapes, disks, and other electronic media, microfilm, microfiche, storage devices, press releases, contracts, agreements, notices and summaries.  Any non-identical version of a Document constitutes a separate Document within this definition, including without limitation drafts or copies bearing any notation, edit, comment, marginalia, underscoring, highlighting, marking, commit messages, or any other alteration of any kind resulting in any difference between two or more otherwise identical Documents.  In the case of Documents bearing any notation or other marking made by highlighting ink, the term Document means the original version bearing the highlighting ink, which original must be produced as opposed to any copy thereof.

9.   "Entity" means without limitation any corporation, company, limited liability company or corporation, partnership, limited partnership, association, or other firm or similar body, or any unit, division, agency, department, or similar subdivision thereof.

10.  "Identify" or "Identity," as applied to any Document means the provision in writing of information sufficiently particular to enable the Attorney General to request the Document's production through subpoena or otherwise, including but not limited to:  (a) Document type (letter, memo, etc.); (b) Document subject matter; (c) Document date; and (d) Document author(s), addressee(s) and recipient(s).  In lieu of identifying a Document, the Attorney General will accept production of the Document, together with designation of the Document's Custodian, and identification of each Person You believe to have received a copy of the Document.

11.  "Identify" or "Identity," as applied to any Entity, means the provision in writing of such Entity's legal name, any d/b/a, former, or other names, any parent, subsidiary, officers, employees, or agents thereof, and any address(es) and any telephone number(s) thereof.

12.  "Identify" or "Identity," as applied to any natural person, means and includes the provision in writing of the natural person's name, title(s), any aliases, place(s) and dates of employment, telephone number(s), e-mail address(es), mailing addresses and physical address(es).

13.  "Person" means any natural person, or any Entity.

14.  "Sent" or "received" as used herein means, in addition to their usual meanings, the transmittal or reception of a Document by physical, electronic or other delivery, whether by direct or indirect means.

15.  "Subpoena" means this subpoena and any schedules or attachments thereto.

16.  The use of the singular form of any word used herein shall include the plural and

2

vice versa. The use of any tense of any verb includes all other tenses of the verb.

## B. Particular Definitions

17. "Respondent," "You," "Your" or "WinRed" means WinRed, Inc. and any of its predecessors, successors, present or former parents, subsidiaries, or affiliates, whether direct or indirect; and all directors, officers, partners, employees, agents, contractors, consultants, representatives, and attorneys of the foregoing, or any other Persons associated with or acting on behalf of the foregoing, or acting on behalf of any predecessors, successors, or affiliates of the foregoing.

18. "New York donor" means any resident of New York State who contributes money to any Person or Entity (including any political committee, political party, or candidate for federal, state or local election) through WinRed.

### C.  Instructions

1.  <u>Preservation of Relevant Documents and Information; Spoliation.</u>  You are reminded of Your obligations under law to preserve Documents and information relevant or potentially relevant to this Subpoena from destruction or loss, and of the consequences of, and penalties available for, spoliation of evidence.  No agreement, written or otherwise, purporting to modify, limit or otherwise vary the terms of this Subpoena, shall be construed in any way to narrow, qualify, eliminate or otherwise diminish Your aforementioned preservation obligations.  Nor shall You act, in reliance upon any such agreement or otherwise, in any manner inconsistent with Your preservation obligations under law.  No agreement purporting to modify, limit or otherwise vary Your preservation obligations under law shall be construed as in any way narrowing, qualifying, eliminating or otherwise diminishing such aforementioned preservation obligations, nor shall You act in reliance upon any such agreement, unless an Assistant Attorney General confirms or acknowledges such agreement in writing, or makes such agreement a matter of record in open court.

2.  <u>Possession, Custody, and Control.</u>  The Subpoena calls for all responsive Documents or information in Your possession, custody or control.  This includes, without limitation, Documents or information possessed or held by any of Your officers, directors, employees, agents, representatives, divisions, affiliates, subsidiaries or Persons from whom You could request Documents or information. If Documents or information responsive to a request in this Subpoena are in Your control, but not in Your possession or custody, You shall promptly Identify the Person with possession or custody.

3.  <u>Documents No Longer in Your Possession.</u>  If any Document requested herein was formerly in Your possession, custody or control but is no longer available, or no longer exists, You shall submit a statement in writing under oath that:  (a) describes in detail the nature of such Document and its contents; (b) Identifies the Person(s) who prepared such Document and its contents; (c) Identifies all Persons who have seen or had possession of such Document; (d) specifies the date(s) on which such Document was prepared, transmitted or received; (e) specifies the date(s) on which such Document became unavailable; (f) specifies the reason why such Document is unavailable, including without limitation whether it was misplaced, lost, destroyed or transferred; and if such Document has been destroyed or transferred, the conditions of and reasons for such destruction or transfer and the Identity of the Person(s) requesting and performing such destruction or transfer; and (g) Identifies all Persons with knowledge of any portion of the contents of the Document.

4.  <u>No Documents Responsive to Subpoena Requests.</u>  If there are no Documents responsive to any particular Subpoena request, You shall so state in writing under oath in the Affidavit of Compliance attached hereto, identifying the paragraph number(s) of the Subpoena request concerned.

5.    <u>Format of Production.</u>  You shall produce Documents and information responsive to this Subpoena in the format requested by the Office of the New York State Attorney General.  Productions in electronic format shall meet the specifications set out in Attachments 1 and 2 unless otherwise specified and agreed to by the Office of Attorney General.

6.    <u>Existing Organization of Documents to be Preserved.</u>  Regardless of whether a production is in electronic or paper format, each Document shall be produced in the same form, sequence, organization or other order or layout in which it was maintained before production, including but not limited to production of any Document or other material indicating filing or other organization.  Such production shall include without limitation any file folder, file jacket, cover or similar organizational material, as well as any folder bearing any title or legend that contains no Document.  Likewise, all Documents that are physically attached to each other in Your files shall remain so attached in any production; or if such production is electronic, shall be accompanied by notation or information sufficient to indicate clearly such physical attachment.

7.    <u>Manner of Compliance – Custodians/Search Terms/Technology-Assisted Review.</u>  Prior consultation with the Office of the Attorney General is required concerning selection of custodians for document searches (whether electronic or otherwise) or for use of search term filters, predictive coding or other forms of technology-assisted review.  The Office of the Attorney General reserves the right to approve, disapprove, modify or supplement any proposed list of custodians, search terms, and/or review methodology.  The selection or use of custodians, search term filters, and/or technology-assisted review in no way relieves You of Your obligation to fully respond to these requests for Documents or information.

8.    <u>Document Numbering.</u>  All Documents responsive to this Subpoena, regardless of whether produced or withheld on ground of privilege or other legal doctrine, and regardless of whether production is in electronic or paper format, shall be numbered in the lower right corner of each page of such Document, without disrupting or altering the form, sequence, organization or other order or layout in which such Documents were maintained before production.  Such number shall comprise a prefix containing the producing Person's name or an abbreviation thereof, followed by a unique, sequential, identifying document control number.

9.    <u>Privilege Placeholders.</u>  For each Document withheld from production on ground of privilege or other legal doctrine, regardless of whether a production is electronic or in hard copy, You shall insert one or more placeholder page(s) in the production bearing the same document control number(s) borne by the Document withheld, in the sequential place(s) originally occupied by the Document before it was removed from the production.

10.    <u>Privilege.</u>  If You withhold or redact any Document responsive to this Subpoena on ground of privilege or other legal doctrine, You shall submit with the Documents produced a statement in writing under oath, stating:  (a) the document

control number(s) of the Document withheld or redacted; (b) the type of Document; (c) the date of the Document; (d) the author(s) and recipient(s) of the Document; (e) the general subject matter of the Document; and (f) the legal ground for withholding or redacting the Document.  If the legal ground for withholding or redacting the Document is attorney-client privilege, You shall indicate the name of the attorney(s) whose legal advice is sought or provided in the Document.

11.    <u>Your Production Instructions to be Produced.</u>  You shall produce a copy of all written or otherwise recorded instructions prepared by You concerning the steps taken to respond to this Subpoena.  For any unrecorded instructions given, You shall provide a written statement under oath from the Person(s) who gave such instructions that details the specific content of the instructions and any Person(s) to whom the instructions were given.

12.    <u>Cover Letter, Index, and Identifying Information.</u>  Accompanying any production(s) made pursuant to this Subpoena, You shall include a cover letter that shall at a minimum provide an index containing the following:  (a) a description of the type and content of each Document produced therewith; (b) the paragraph number(s) of the Subpoena request(s) to which each such Document is responsive; (c) the Identity of the Custodian(s) of each such Document; and (d) the document control number(s) of each such Document.  As further set forth in Attachment 2, information must also be included in the metadata and load files of each production concerning the identity of each Document's custodian, as well as information identifying the particular Document requests and/or information to which each document is responsive.

13.    <u>Affidavit of Compliance.</u>  A copy of the Affidavit of Compliance provided herewith shall be completed and executed by all natural persons supervising or participating in compliance with this Subpoena, and You shall submit such executed Affidavit(s) of Compliance with Your response to this Subpoena.

14.    <u>Identification of Persons Preparing Production.</u>  In a schedule attached to the Affidavit of Compliance provided herewith, You shall Identify the natural person(s) who prepared or assembled any productions or responses to this Subpoena.  You shall further Identify the natural person(s) under whose personal supervision the preparation and assembly of productions and responses to this Subpoena occurred.  You shall further Identify all other natural person(s) able competently to testify:  (a) that such productions and responses are complete and correct to the best of such person's knowledge and belief; and (b) that any Documents produced are authentic, genuine and what they purport to be.

15.    <u>Continuing Obligation to Produce.</u>  This Subpoena imposes a continuing obligation to produce the Documents and information requested.  Documents located or created, and information learned, acquired or created, at any time after Your response is due shall be promptly produced at the place specified in this Subpoena.

16.    <u>No Oral Modifications.</u>  No agreement purporting to modify, limit or otherwise vary this Subpoena shall be valid or binding, and You shall not act in reliance upon any such agreement, unless an Assistant Attorney General confirms or acknowledges such agreement in writing, or makes such agreement a matter of record in open court.

17.    <u>Time Period.</u>  Unless otherwise specified, the time period covered by this Subpoena shall be from January 1, 2019 through the present.

### D. Documents to be Produced

1. Documents (such as an organizational chart) sufficient to Identify:
   a. All corporations, LLCs and other entities affiliated with WinRed;
   b. All Persons and Entities with an ownership interest in WinRed (including a description of the nature and extent of such ownership interest); and
   c. All officers of WinRed.

2. Documents sufficient to Identify all political committees, parties and candidates (and any other clients) for whom WinRed has used pre-checked recurring or additional donation boxes in a fundraising solicitation or donation page.

3. Screen shots (or comparable documents representing WinRed's website as it appears to donors and other users) for all web pages that WinRed has hosted or used to solicit donations that included a pre-checked box for recurring or additional donations, including all disclosures made to potential donors about recurring donations and any other text and images that accompany the pre-checked boxes. For each such web page, include screen shots or comparable documents documenting how or when the interface, wording, or format changed over time for that page.

4. All complaints received by WinRed from New York donors Concerning recurring or additional donations, as well as Your responses to those complaints.

5. Documents sufficient to identify all refunds provided by WinRed to New York donors, including for each refund:
   a. Whether the donor made the refunded contribution through a web page that used pre-checked boxes;
   b. The name of the political committee, party or candidate who received the donation;
   c. The total amount of the donation made by the donor;
   d. The total amount returned to each donor; and
   e. Any fees retained by WinRed when making the refund.

6. WinRed's written policies and procedures Concerning:
   a. The use of pre-checked box option for political fundraising;
   b. Cancelling or refunding donations made through pre-checked boxes;
   c. Making refunds in response to donor complaints; and
   d. Retention of fees when making refunds to donors.

7. All Communications Concerning recurring donations, including any representations about the use of pre-checked boxes or other methods for securing recurring donations,

the disclosures made to donors about the use of recurring donations, and any representations about WinRed's ability to secure recurring donations for political committees, parties or candidates.

8. All Documents Concerning analyses, studies and reports Concerning the effectiveness, impact and/or use of pre-checked donation boxes, including but not limited to A/B testing, user interface testing, user stories, or analyses of the content and layout of solicitations using pre-checked donation boxes.

9. Documents showing the conversion rate of website donors who made recurring donations in the absence of a pre-checked recurring donation box as compared to when a pre-checked recurring donation box was added.

**ATTACHMENT 1**
**Electronic Document Production Specifications**

Unless otherwise specified and agreed to by the Office of Attorney General, all responsive documents must be produced in LexisNexis® Concordance® format in accordance with the following instructions.  Any questions regarding electronic document production should be directed to the Assistant Attorney General whose telephone number appears on the subpoena.

1.    Concordance Production Components.  A Concordance production consists of the following component files, which must be produced in accordance with the specifications set forth below in Section 7.

   A.    ***Metadata Load File.***  A delimited text file that lists in columnar format the required metadata for each produced document.

   B.    ***Extracted or OCR Text Files.***  Document-level extracted text for each produced document or document-level optical character recognition ("OCR") text where extracted text is not available.

   C.    ***Single-Page Image Files.***  Individual petrified page images of the produced documents in tagged image format ("TIF"), with page-level Bates number endorsements.

   D.    ***Opticon Load File.***  A delimited text file that lists the single-page TIF files for each produced document and defines (i) the relative location of the TIF files on the production media and (ii) each document break.

   E.    ***Native Files.***  Native format versions of non-printable or non–print friendly produced documents.

2.    Production Folder Structure.  The production must be organized according to the following standard folder structure:
   - data\ (contains production load files)
   - images\ (contains single-page TIF files, with subfolder organization)
      \0001, \0002, \0003…
   - native_files\ (contains native files, with subfolder organization)
      \0001, \0002, \0003…
   - text\ (contains text files, with subfolder organization)
      \0001, \0002, \0003…

3.    De-Duplication.  You must perform global de-duplication of stand-alone documents and email families against any prior productions pursuant to this or previously related subpoenas.

4.    Paper or Scanned Documents.  Documents that exist only in paper format must be scanned to single-page TIF files and OCR'd.  The resulting electronic files should

1

be pursued in Concordance format pursuant to these instructions. You must contact the Assistant Attorney General whose telephone number appears on the subpoena to discuss (i) any documents that cannot be scanned, and (ii) how information for scanned documents should be represented in the metadata load file.

5.   <u>Structured Data</u>. Before producing structured data, including but not limited to relational databases, transactional data, and xml pages, you must first speak to the Assistant Attorney General whose telephone number appears on the subpoena. Structured data is data that has a defined length and format and includes, but is not limited to, relational databases, graphical databases, JSON files, or xml/html pages.

A.   Relational Databases

1.   Database tables should be provided in CSV or other delimited machine-readable, non-proprietary format, with each table in a separate data file. The preferred delimiter is a vertical bar "|". If after speaking with the Assistant Attorney General and it is determined that the data cannot be exported from a proprietary database, then the data can be produced in the proprietary format so long as the Office of the Attorney General is given sufficient access to that data.

2.   Each database must have an accompanying Data Dictionary.

3.   Dates and numbers must be clearly and consistently formatted and, where relevant, units of measure should be explained in the Data Dictionary.

4.   Records must contain clear, unique identifiers, and the Data Dictionary must include explanations of how the files and records relate to one another.

5.   Each data file must also have an accompanying summary file that provides total row counts for the entire dataset and total row counts.

B.   Compression

1.   If Documents are provided in a compressed archive, only standard lossless compression methods (e.g., gzip, bzip2, and ZIP) shall be used. Media files should be provided in their original file format, with metadata preserved and no additional lossy encoding applied.

6.     <u>Media and Encryption</u>.  All documents must be produced on CD, DVD, or hard-drive media.   After consultation with the Assistant Attorney General, Documents may also be produced over a secure file transfer protocol (FTP), a pre-approved cloud-based platform (e.g. Amazon Web Services S3 bucket), or the Attorney General's cloud platform OAGCloud. All production media must be protected with a strong, randomly-generated password containing at least 16 alphanumeric characters and encrypted using Advanced Encryption Standard with 256-bit key length (AES-256). Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately from the media.

7.     <u>Production File Requirements</u>.

    A.     ***Metadata Load File***
- Required file format:
  - ASCII or UTF-8
  - Windows formatted CR + LF end of line characters, including full CR + LF on last record in file.
  - .dat file extension
  - Field delimiter: (ASCII decimal character 20)
  - Text Qualifier: þ (ASCII decimal character 254).  Date and pure numeric value fields do not require qualifiers.
  - Multiple value field delimiter: ; (ASCII decimal character 59)
- The first line of the metadata load file must list all included fields.  All required fields are listed in Attachment 2.
- Fields with no values must be represented by empty columns maintaining delimiters and qualifiers.
- ***Note:*** All documents must have page-level Bates numbering (except documents produced only in native format, which must be assigned a document-level Bates number).  The metadata load file must list the beginning and ending Bates numbers (BEGDOC and ENDDOC) for each document.  For document families, including but not limited to emails and attachments, compound documents, and uncompressed file containers, the metadata load file must also list the Bates range of the entire document family (ATTACHRANGE), beginning with the first Bates number (BEGDOC) of the "parent" document and ending with the last Bates number (ENDDOC) assigned to the last "child" in the document family.
- Date and Time metadata must be provided in separate columns.
- Accepted date formats:
  - mm/dd/yyyy
  - yyyy/mm/dd
  - yyyymmdd
- Accepted time formats:
  - hh:mm:ss (if not in 24-hour format, you must indicate am/pm)
  - hh:mm:ss:mmm

B.    ***Extracted or OCR Text Files***

- You must produce individual document-level text files containing the full extracted text for each produced document.
- When extracted text is not available (for instance, for image-only documents) you must provide individual document-level text files containing the document's full OCR text.
- The filename for each text file must match the document's beginning Bates number (BEGDOC) listed in the metadata load file.
- Text files must be divided into subfolders containing no more than 500 to 1000 files.

C.    ***Single-Page Image Files (Petrified Page Images)***

- Where possible, all produced documents must be converted into single-page tagged image format ("TIF") files. See Section 7.E below for instructions on producing native versions of documents you are unable to convert.
- Image documents that exist only in non-TIF formats must be converted into TIF files. The original image format must be produced as a native file as described in Section 7.E below.
- For documents produced only in native format, you must provide a TIF placeholder that states "Document produced only in native format."
- Each single-page TIF file must be endorsed with a unique Bates number.
- The filename for each single-page TIF file must match the unique page-level Bates number (or document-level Bates number for documents produced only in native format).
- Required image file format:
  - CCITT Group 4 compression
  - 2-Bit black and white
  - 300 dpi
  - Either .tif or .tiff file extension.
- TIF files must be divided into subfolders containing no more than 500 to 1000 files. Where possible documents should not span multiple subfolders.

D.    ***Opticon Load File***

- Required file format:
  - ASCII
  - Windows formatted CR + LF end of line characters
  - Field delimiter: , (ASCII decimal character 44)
  - No Text Qualifier
  - .opt file extension
- The comma-delimited Opticon load file must contain the following seven fields (as indicated below, values for certain fields may be left blank):

- o ALIAS or IMAGEKEY – the unique Bates number assigned to each page of the production.
- o VOLUME – this value is optional and may be left blank.
- o RELATIVE PATH – the filepath to each single-page image file on the production media.
- o DOCUMENT BREAK – defines the first page of a document. The only possible values for this field are "Y" or blank.
- o FOLDER BREAK – defines the first page of a folder. The only possible values for this field are "Y" or blank.
- o BOX BREAK – defines the first page of a box. The only possible values for this field are "Y" or blank.
- o PAGE COUNT – this value is optional and may be left blank.
- • ***Example*:**
  ABC00001,,IMAGES\0001\ABC00001.tif,Y,,,2
  ABC00002,,IMAGES\0001\ABC00002.tif,,,,
  ABC00003,,IMAGES\0002\ABC00003.tif,Y,,,1
  ABC00004,,IMAGES\0002\ABC00004.tif,Y,,,1

E. ***Native Files***

- • Non-printable or non–print friendly documents (including but not limited to spreadsheets, audio files, video files and documents for which color has significance to document fidelity) must be produced in their native format.
- • The filename of each native file must match the document's beginning Bates number (BEGDOC) in the metadata load file and retain the original file extension.
- • For documents produced only in native format, you must assign a single document-level Bates number and provide an image file placeholder that states "Document produced only in native format."
- • The relative paths to all native files on the production media must be listed in the NATIVEFILE field of the metadata load file.
- • Native files that are password-protected must be decrypted prior to conversion and produced in decrypted form. In cases where this cannot be achieved the document's password must be listed in the metadata load file. The password should be placed in the COMMENTS field with the format Password: <PASSWORD>.
- • You may be required to supply a software license for proprietary documents produced only in native format.

**ATTACHMENT 2**
**Required Fields for Metadata Load File**

| FIELD NAME | FIELD DESCRIPTION | FIELD VALUE EXAMPLE[1] |
|---|---|---|
| DOCID | Unique document reference (can be used for de-duplication). | ABC0001 or ###.######.### |
| BEGDOC | Bates number assigned to the first page of the document. | ABC0001 |
| ENDDOC | Bates number assigned to the last page of the document. | ABC0002 |
| BEGATTACH | Bates number assigned to the first page of the parent document in a document family (*i.e.*, should be the same as BEGDOC of the parent document, or PARENTDOC). | ABC0001 |
| ENDATTACH | Bates number assigned to the last page of the last child document in a family (*i.e.*, should be the same as ENDDOC of the last child document). | ABC0008 |
| ATTACHRANGE | Bates range of entire document family. | ABC0001 - ABC0008 |
| PARENTDOC | BEGDOC of parent document. | ABC0001 |
| CHILDDOCS | List of BEGDOCs of all child documents, delimited by ";" when field has multiple values. | ABC0002; ABC0003; ABC0004… |
| DOCREQ | List of particular Requests for Documents to be Produced in the subpoena | 1; 2; 3 . . . |
| INTERROG | List of particular [Requests for Information] [interrogatories] in the subpoena | 1; 2; 3 . . . |
| COMMENTS | Additional document comments, such as passwords for encrypted files. | |

---

[1] Examples represent possible values and not required format unless the field format is specified in Attachment 1.

| NATIVEFILE | Relative file path of the native file on the production media. | .\Native_File\Folder\...\BEGDOC.ext |
|---|---|---|
| SOURCE | For scanned paper records this should be a description of the physical location of the original paper record. For loose electronic files this should be the name of the file server or workstation where the files were gathered. | Company Name, Department Name, Location, Box Number… |
| CUSTODIAN | Owner of the document or file. | Firstname Lastname, Lastname, Firstname, User Name; Company Name, Department Name... |
| FROM | Sender of the email. | Firstname Lastname < FLastname @domain > |
| TO | All to: members or recipients, delimited by ";" when field has multiple values. | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; … |
| CC | All cc: members, delimited by ";" when field has multiple values. | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; … |
| BCC | All bcc: members, delimited by ";" when field has multiple values | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; … |
| SUBJECT | Subject line of the email. | |
| DATERCVD | Date that an email was received. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| TIMERCVD | Time that an email was received. | hh:mm:ss AM/PM or hh:mm:ss |
| DATESENT | Date that an email was sent. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |

7

| | | |
|---|---|---|
| TIMESENT | Time that an email was sent. | hh:mm:ss AM/PM or hh:mm:ss |
| CALBEGDATE | Date that a meeting begins. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| CALBEGTIME | Time that a meeting begins. | hh:mm:ss AM/PM or hh:mm:ss |
| CALENDDATE | Date that a meeting ends. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| CALENDTIME | Time that a meeting ends. | hh:mm:ss AM/PM or hh:mm:ss |
| CALENDARDUR | Duration of a meeting in hours. | 0.75, 1.5… |
| ATTACHMENTS | List of filenames of all attachments, delimited by ";" when field has multiple values. | AttachmentFileName.; AttachmentFileName.docx; AttachmentFileName.pdf; … |
| NUMATTACH | Number of attachments. | 1, 2, 3, 4…. |
| RECORDTYPE | General type of record. | IMAGE; LOOSE E-MAIL; E-MAIL; E-DOC; IMAGE ATTACHMENT; LOOSE E-MAIL ATTACHMENT; E-MAIL ATTACHMENT; E-DOC ATTACHMENT |
| FOLDERLOC | Original folder path of the produced document. | Drive:\Folder\…\…\ |
| FILENAME | Original filename of the produced document. | Filename.ext |
| DOCEXT | Original file extension. | html, xls, pdf |
| DOCTYPE | Name of the program that created the produced document. | Adobe Acrobat, Microsoft Word, Microsoft Excel, Corel WordPerfect… |
| TITLE | Document title (if entered). | |
| AUTHOR | Name of the document author. | Firstname Lastname; Lastname, First Name; FLastname |
| REVISION | Number of revisions to a document. | 18 |

| DATECREATED | Date that a document was created. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| --- | --- | --- |
| TIMECREATED | Time that a document was created. | hh:mm:ss AM/PM or hh:mm:ss |
| DATEMOD | Date that a document was last modified. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd |
| TIMEMOD | Time that a document was last modified. | hh:mm:ss AM/PM or hh:mm:ss |
| FILESIZE | Original file size in bytes. | 128, 512, 1024… |
| PGCOUNT | Number of pages per document. | 1, 2, 10, 100… |
| IMPORTANCE | Email priority level if set. | Low, Normal, High |
| TIFFSTATUS | Generated by the Law Pre-discovery production tool (leave blank if inapplicable). | Y, C, E, W, N, P |
| DUPSTATUS | Generated by the Law Pre-discovery production tool (leave blank if inapplicable). | P |
| MD5HASH | MD5 hash value computed from native file (a/k/a file fingerprint). | BC1C5CA6C1945179FEE144F25F51087B |
| SHA1HASH | SHA1 hash value | B68F4F57223CA7DA3584BAD7ECF111B8044F8631 |
| MSGINDEX | Email message ID | |

## AFFIDAVIT OF COMPLIANCE WITH SUBPOENA

State of _____  }
County of _____  }

I, _____, being duly sworn, state as follows:

1.  I am employed by Respondent in the position of _____
    _____;

2.  Respondent's productions and responses to the Subpoena of the Attorney General
    of the State of New York, dated _____, 20_____ (the "Subpoena")
    were prepared and assembled under my personal supervision;

3.  I made or caused to be made a diligent, complete and comprehensive search for
    all Documents and information requested by the Subpoena, in full accordance
    with the instructions and definitions set forth in the Subpoena;

4.  Respondent's productions and responses to the Subpoena are complete and
    correct to the best of my knowledge and belief;

5.  No Documents or information responsive to the Subpoena have been withheld
    from Respondent's production and response, other than responsive Documents or
    information withheld on the basis of a legal privilege or doctrine;

6.  All responsive Documents or information withheld on the basis of a legal
    privilege or doctrine have been identified on a privilege log composed and
    produced in accordance with the instructions in the Subpoena;

7.  The Documents contained in Respondent's productions and responses to the
    Subpoena are authentic, genuine and what they purport to be;

8.  Attached is a true and accurate record of all persons who prepared and assembled
    any productions and responses to the Subpoena, all persons under whose personal
    supervision the preparation and assembly of productions and responses to the
    Subpoena occurred, and all persons able competently to testify:  (a) that such
    productions and responses are complete and correct to the best of such person's
    knowledge and belief; and (b) that any Documents produced are authentic,
    genuine and what they purport to be; and

9.      Attached is a true and accurate statement of those requests under the Subpoena as to which no responsive Documents were located in the course of the aforementioned search.


_____          _____
          Signature of Affiant                                        Date


_____
         Printed Name of Affiant



*      *      *


Subscribed and sworn to before me this _____ day of _____, 20____.


_____, Notary Public


My commission expires: _____

# EXHIBIT 5



## The People's Lawyer

As Attorney General, Keith will fight for a Minnesota that lives up to our promise of liberty and justice for all.

**This is your movement. Contribute $10, $25, $50 today.**

*If you would prefer to contribute by mail, please send a check made out to Keith Ellison for Attorney General to:*

*PO Box 80824*
*Minneapolis, MN 55408*

Prepared and paid for by Keith Ellison for Attorney General, PO Box 80824, Minneapolis, MN 55408



**1) Amount**    2) Details    3) Payment

Your contribution will benefit Keith Ellison.

| | | |
|---|---|---|
| $2,500 | $1,000 | $500 | $250 |
| $100 | $50 | $25 | $ |

**Make it monthly!**

Yes, count me in!    ✓  No, donate once

**Checkout**

Have an ActBlue Express account? Sign in to give faster.

VISA  MASTERCARD  AMERICAN EXPRESS  DISCOVER

**Continue with credit or debit**

---

Contribution rules

1. I am making this contribution with my own personal credit card and not with a corporate or business credit card or a card issued to another person.
2. I am a U.S. citizen or lawfully admitted permanent resident (i.e., green card holder).
3. A legislator or state constitutional officer who is a candidate for a county, city, or town office, the candidate's principal campaign committee, and any other political committee with the candidate's name or title may not solicit or accept a contribution from a political fund or registered lobbyist during a regular session of the legislature.
4. I am at least eighteen years old.
5. This contribution is made from my own funds, and funds are not being provided to me by another person or entity for the purpose of making this contribution.

By proceeding with this transaction, you agree to ActBlue's terms & conditions.

---

Paid for by ActBlue (actblue.com) and not authorized by any candidate or candidate's committee.

Contributions or gifts to ActBlue are not deductible as charitable contributions for Federal income tax purposes.

## Support Tish James today for NYS Attorney General!



**Choose an amount:**

Your contribution will benefit Letitia James.

| | | | |
|---|---|---|---|
| $50 | $100 | $250 | $1,000 |
| $2,500 | $ | | |

**Make it monthly!**

| Yes, count me in! | ✓ No, donate once |
|---|---|

**Checkout**

Have an ActBlue Express account? Sign in to give faster.



PayPal

VISA  MASTERCARD  AMERICAN EXPRESS  DISCOVER

**Continue with credit or debit**

---

**Contribution rules**

1. I am a U.S. citizen or lawfully admitted permanent resident (i.e., green card holder).
2. This contribution is made from my own funds, and funds are not being provided to me by another person or entity for the purpose of making this contribution.
3. I am at least eighteen years old.

By proceeding with this transaction, you agree to ActBlue's terms & conditions.

---

Paid for by ActBlue (actblue.com) and not authorized by any candidate or candidate's committee.

Contributions or gifts to ActBlue are not deductible as charitable contributions for Federal income tax purposes.

https://secure.actblue.con/donate/james-for-ny-1[7/26/2021 3:00:23 PM]

# Donate to Brian Frosh for Attorney General



**1) Amount**    2) Details    3) Payment

Your contribution will benefit Brian Frosh.

| $25 | $50 | $100 | $250 |
| $500 | $1,000 | $ | |

### Make it monthly!

| Yes, count me in! | ✓  No, donate once |

### Checkout

Have an ActBlue Express account? Sign in to give faster.

Continue with credit or debit

**Contribution rules**

1. I am a U.S. citizen or lawfully admitted permanent resident (i.e., green card holder).
2. I am at least eighteen years old.
3. This contribution is made from my own funds, and funds are not being provided to me by another person or entity for the purpose of making this contribution.

By proceeding with this transaction, you agree to ActBlue's terms & conditions.

Paid for by ActBlue (actblue.com) and not authorized by any candidate or candidate's committee.

Contributions or gifts to ActBlue are not deductible as charitable contributions for Federal income tax purposes.

https://secure.actblue.com/donate/default-brianfrosh [7/26/2021 3:03:35 PM]