UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

WinRed, Inc.,                                Court File No. 0:21-cv-01575 (JRT/BRT)

           Plaintiff,

  vs.                                   **DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Keith Ellison, in his official capacity as Attorney General for the State of Minnesota; Letitia James, in her official capacity as Attorney General for the State of New York; William Tong, in his official capacity as Attorney General for the State of Connecticut; and Brian Frosh, in his official capacity as Attorney General for the State of Maryland,

           Defendants.

Defendants Keith Ellison, in his official capacity as Attorney General for the State of Minnesota ("Ellison"), Letitia James, in her official capacity as Attorney General for the State of New York ("James"), William Tong, in his official capacity as Attorney General for the State of Connecticut ("Tong") and Brian Frosh, in his official capacity as Attorney General for the State of Maryland ("Frosh") (collectively the "Attorneys General") respectfully submit this reply memorandum of law in further support of their motion to dismiss the Complaint for Declaratory Relief (the "Complaint") filed by Plaintiff WinRed, Inc. ("WinRed"). As set forth more fully below and in the Defendants' opening

Memorandum of Law in Support of Motion to Dismiss Compl. (ECF Doc. No. 34) ("Defs.' Mot. Dismiss Br."), Defendants' Motion to Dismiss should be granted.

## A. The Court Lacks Personal Jurisdiction Over the Out-of-State Defendants

As explained in Defendants' Motion to Dismiss Brief, WinRed has failed to plead even a *prima facie* basis for the Court's exercise of personal jurisdiction over Defendants Frosh, James and Tong (the "Out-of-State Defendants"), whether on the basis of general jurisdiction or specific jurisdiction. In its Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp. Br.") (ECF Doc. No. 44), WinRed does not dispute these points. Instead, WinRed contends that the Court may exercise jurisdiction over these Defendants under a theory of "conspiracy jurisdiction," because all of the Defendants are somehow conspiring to commit the unlawful act of "asserting their respective States' consumer-protection laws in a way that is preempted by federal law." Pl.'s Opp. Br. at 3. This novel theory of jurisdiction should be rejected by this Court.

To establish conspiracy jurisdiction over a non-resident defendant, a plaintiff must show that "(1) a conspiracy existed, (2) the non-resident defendant[s] participated in or joined the conspiracy, and (3) an overt act was taken in furtherance of the conspiracy within the forum's borders." *Yellow Brick Rd., LLC v. Childs*, 36 F. Supp. 3d 855, 864 (D. Minn. 2014). And to establish the existence of a conspiracy, a plaintiff must show (1) a combination of two or more people (2) to commit an unlawful act or a lawful act by unlawful means. *Hong Chen v. Mar*, No. A10-1908, 2011 WL 2119406, at *5 (Minn. Ct. App. May 31, 2011) (citing *Harding v. Ohio Cas. Ins. Co.*, 41 N.W.2d 818, 824 (Minn. 1950)). But not just any "unlawful act" can form the basis for a conspiracy; rather, the

existence of a conspiracy "is based on the commission of an underlying tort." *Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 551 (8th Cir. 1996) (citing *Harding v. Ohio Cas. Ins. Co.*, 41 N.W.2d 818, 825 (1950)).[1]

WinRed claims that Defendants' investigations are "unlawful" because they are preempted by Federal law. *See* Compl. ¶¶ 48, 60, 70. But this circular logic fails because, as Defendants have shown at length, WinRed's preemption arguments have no merit and therefore there is no "unlawful" conduct here. Even if WinRed was correct about preemption here (which it is not), a state investigation into deceptive or unlawful practices is not the type of tortious conduct contemplated in any of the cases finding "conspiracy jurisdiction."

WinRed has not pleaded any facts in its Complaint that suggest Defendants' investigations are improper or unlawful, because no such facts exist. But even if they had, the doctrine of absolute prosecutorial immunity would bar any claim premised on the theory Defendants' investigation of WinRed's practices amounts to a constitutional tort. *See, e.g.*, *Ledwith v. Douglas*, 568 F.2d 117, 119 (8th Cir. 1978) (holding that constitutional tort under 42 U.S.C. § 1983 against Consumer Protection Division of Nebraska Attorney General's Office was barred by doctrine of absolute prosecutorial immunity); *Brown v. Dayton Hudson Corp.*, 314 N.W.2d 210, 213-14 (Minn. 1981) (recognizing doctrine of absolute prosecutorial immunity in Minnesota). Such immunity extends not only to

---

[1] *See also DURAG Inc. v. Kurzawski*, No. 17-CV-5325 (ECT/HB), 2020 WL 2112296, at *6 (D. Minn. May 4, 2020) (holding that reasonable fact-finder could conclude the exercise of personal jurisdiction based on conspiracy jurisdiction theory was appropriate where plaintiff can establish the elements of a civil conspiracy under Minnesota law).

criminal prosecutions but civil enforcement actions, *see Ledwith*, 568 F.2d at 119, and

protects public prosecutors from suit for actions taken "in the performance of prosecutorial

functions," including "sending out subpoenas." *Bramlett v. Oesch*, No. 1:21-CV-00007-

ACL, 2021 WL 2105268, at *5 (E.D. Mo. May 25, 2021).[2]

  Since there is no actionable tort—under federal or Minnesota law—for conducting

an investigation in support of a potential state enforcement action that would be preempted

by federal law, there can be no conspiracy to conduct such an "unlawful" investigation

under Minnesota law.[3]  And since there can be no conspiracy to engage in such unlawful

conduct in Minnesota, there can be no conspiracy jurisdiction over the Out-of-State

Defendants.  To hold otherwise would lead to the incongruous conclusion that foreign

defendants could be subject to conspiracy jurisdiction in a forum on the basis of a

conspiracy that cannot exist as a matter of law.  The claims against the Out-of-State

Defendants should be dismissed.

---

[2] Even under the related doctrine of "qualified immunity," which attaches to prosecutors' actions when they are acting in an "investigatory" or "administrative" (as opposed to a "prosecutorial") capacity, *Brodnicki v. Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996), no claim would lie here.  "A public official is entitled to qualified immunity unless: (1) their conduct violated a constitutional right, and (2) that right was clearly established."  *Davis v. Buchanan Cty., Missouri*, ---F.4th---, 2021 WL 3729050, at *10 (8th Cir. Aug. 24, 2021).  Here, WinRed's "rights" (such as they exist) under the Supremacy Clause of the U.S. Constitution to be free from the Defendants' investigation are not "clearly established."  *See Turning Point USA at Arkansas State Univ. v. Rhodes*, 973 F.3d 868, 880 (8th Cir. 2020) (holding that for a right to be "clearly established," "existing precedent must have placed the statutory or constitutional question beyond debate" (internal quotation marks omitted)).

[3] Not even WinRed seems to believe such a claim exists, as it did not assert one in this case.

**B.  The Attorneys General's Investigation of WinRed is Not Preempted by FECA**

The Attorneys General have already shown that their investigation is not preempted by the Federal Election Campaign Act ("FECA"), regardless of whether the Court considers WinRed's theories of express preemption, implied (or field) preemption, or conflict preemption.  *See generally* Defs.' Mot. to Dismiss Br. at 12-23; Defs.' Mem. of Law in Opp. to Pl.'s Mot. for a Prel. Inj. (ECF Doc. No. 39) ("Defs.' Prelim. Inj. Opp. Br.") at 12-18.   Nothing in WinRed's opposition filing rebuts that argument or corrects WinRed's persistent misstatements of the law.

For example, WinRed argues that this investigation is preempted because "automatic, recurring withdrawals are clearly permissible under FECA."  Pl.'s Opp. Br. at 14.   But the Attorneys General have never claimed otherwise.  This inquiry concerns whether WinRed is engaging in *unauthorized* recurring withdrawals, and whether WinRed's platform is facilitating the deception of donors into making such donations without their express informed consent.  Similarly, WinRed claims that "the FEC has established that, under current federal law, WinRed's practices related to conduiting federal political contributions are not illegal."  Pl.'s Opp. Br. at 15.  But "conduiting" is not the issue here.  It is whether WinRed's platform is being used to deceive donors, so that WinRed is "conduiting" unauthorized withdrawals from donors' bank accounts to political committees.

For these reasons, WinRed's continued reliance on cases like *Bunning v. Kentucky*, 42 F.3d 1008 (6th Cir. 1994), *Galliano v. United States Postal Serv.*, 836 F.2d 1362 (D.C. Cir. 1988), *Teper v. Miller*, 82 F.3d 989 (11th Cir. 1996), and *New Hampshire Attorney*

*General v. Bass Victory Committee*, 104 A.3d 181 (N.H. 2014) (*see* Pl.'s Opp. Br. at 10-12) is misplaced.  Unlike in those cases, Defendants are not seeking to impose additional disclosure requirements on federal campaign expenditures (*Bass*), impose additional limitations on what constitutes permissible expenditures (*Bunning*) or when a candidate may engage in fundraising (*Teper*), or preclude the use of disclosure conventions that are expressly permitted by federal law (*Galliano*).  *See generally* Defs.' Prelim. Inj. Opp. Br. at 16-17.  In fact, WinRed completely ignores then-Judge Ginsberg's emphasis in *Galliano* that, apart from the specific disclosures and disclaimers expressly regulated by federal law, "much may appear in a solicitation for political contributions that could materially deceive readers and thereby constitute a false representation under" non-FECA law.  836 F.2d at 1371.  That is the situation here, where WinRed has allegedly failed to obtain the consent of donors in its use of otherwise permissible recurring contribution devices.

WinRed's implied and conflict preemption arguments fare no better.  WinRed simply rehashes legal arguments asserted in its Complaint (at ¶¶ 19-32) and Memorandum of Law in Support of WinRed, Inc.'s Motion for Preliminary Injunction ("Pl.'s Prelim. Inj. Br.") (ECF No. 23) at 8-14, *see* Pl.'s Opp. Br. at 12-16.  For the reasons expressed in Defendants' Motion to Dismiss Brief at 16-20 and Preliminary Injunction Opposition Brief at 13-16, those arguments lack merit.  But it is telling that, in connection with these arguments, WinRed again mischaracterizes Defendants' regulatory efforts as seeking to "*prohibit[]*" under state law "a practice [that is] *allowed* under federal law."  Pl.'s Opp. Br. at 14; *see also id.* at 15-16 ("If a practice is legal under a federal law designed to impose uniformity across all fifty states, a competing state law that *deems that practice illegal* does

indeed "actually conflict[] with federal objectives and goals.'" (emphasis added)). Nothing in FECA or its implementing regulations authorizes WinRed to draw funds from donors' bank accounts without donors' consent. WinRed's preemption argument depends on this sleight of hand. The Court should reject it.

WinRed's opposition arguments also appear to rely on the fiction that the Attorneys General are only investigating the conduit PAC side of its business.[4] But of course, that is not true. WinRed presents itself to the public as an "online fundraising platform" that "is similar to other donation platforms (create a page and send email or ads traffic to it) – except our technology layer is combined with a Conduit PAC." *See* WinRed, *WinRed is Here!* (June 23, 2019), https://winred.com/blog/winred-is-here/. The Attorneys General's investigation has always concerned both WinRed's "technology layer" (which facilitates potentially deceptive solicitations) and its "Conduit PAC" (which transfers unauthorized funds in reliance on such solicitations). *See* Compl. Ex. A (multi-state letter to WinRed dated April 29, 2021) at 1-2.

In its communications with the Attorneys General, WinRed never drew a distinction between these pieces of its business, nor did it ever inform the Attorneys General that it was not responsible for the "technology layer" that facilitates its solicitations. *See* Compl. Exs. B & D. These distinctions are also absent from its public-facing website (which, for

---

[4] *See* Pl. Opp. Br. at 1 ("WinRed does one thing and one thing only—serve as an intermediary through which persons can make 'earmarked' contributions to candidates, political party committees, and political action committees ('PACs') via webpages set up and customized by the candidates and committees."); *id.* at 7 (describing the conduit PAC as WinRed's "sole activity"); *id.* at 16 ("[I]t is imperative to reiterate that WinRed does not 'use' pre-checked boxes. WinRed is a federal political action committee that functions solely to conduit federal contributions").

example, bears a footer stating that the site is "© 2021 WinRed" and "Paid for by WinRed").  *See* [www.winred.com](www.winred.com) (last visited August 24, 2021).  However, in other litigation WinRed has described its PAC and its affiliated technology vendor WinRed Technical Services LLC ("WRTS") as legally distinct entities, even though they share a President (Gerrit Lansing) and work in concert to provide the WinRed platform.  *See Griner v. King*, No. 1:20-cv-03848-RJL, Decl. of Gerrit Lansing on Behalf of WinRed Tech. Servs., LLC (D.D.C. Mar. 18, 2021) (the "*Griner* Lansing Decl.") (attached hereto as Exhibit A).[5]  In other words, WinRed's argument seems to rely on the feint that the Attorneys General are only investigating WinRed's conduit PAC and not the website and solicitation tools provided by its affiliated vendor.[6]

When investigating involuntary recurring contributions, the Attorneys General are not  limited to reviewing the "conduit PAC" side of WinRed's business; for this reason

---

[5] Lansing's declaration in this action uses nearly identical language but scrubs all references to WRTS.  *Compare* Lansing Decl. (ECF Doc. 24) ¶ 8 ("A political committee contracts to set up a WinRed contribution page for the committee according to the committee's specifications. Pursuant to an end user agreement, the political committee uses the website to create a webpage according to the committee's specifications."), *with Griner* Lansing Decl. ¶ 14 ("A political committee contracts *with WRTS* to set up a WinRed contribution page for the committee according to the committee's specifications. Pursuant to an end user agreement *between WRTS and the political committee,* the political committee *uses WRTS to create a webpage* according to the committee's specifications.") (emphasis added).  The Court is free to take judicial notice of the *Griner* Lansing Declaration in adjudicating this motion to dismiss.  *See Wickner v. Rose*, No. 17-CV-1214 (DWF/DTS), 2019 WL 3976203, at *1 (D. Minn. July 3, 2019) (court may take judicial notice of "the public docket and court filings" in another matter).

[6] The unusual relationship between WinRed's PAC and its for-profit vendor appears designed to avoid the same FECA-mandated disclosures and FEC regulation that WinRed has invoked as a shield in the current litigation.  *See* Roger Sollenberger, *GOP Cash Machine's Behavior is 'Nothing Short of Scandalous,'* DAILY BEAST, Apr. 9, 2021, [https://www.thedailybeast.com/gop-cash-machines-behavior-is-nothing-short-of-scandalous](https://www.thedailybeast.com/gop-cash-machines-behavior-is-nothing-short-of-scandalous).

alone, the precise division of responsibilities between WinRed and WRTS in providing the WinRed platform has no bearing on the federal preemption analysis in this case.[7]  Although WinRed brought this action solely on behalf of "WinRed, Inc.,"  it seeks a declaratory judgment that the Defendants' investigation of its recurring donation practices is preempted.   That investigation seeks to understand the extent to which WinRed (and its officers and employees) may have coordinated with entities like WRTS and the users of the WinRed platform to engage in potentially deceptive solicitations and unlawful withdrawals.  *See* Compl. Ex. A.  The exact relationship between WinRed and WRTS is neither relevant to the preemption inquiry nor squarely before the court at this time. Therefore, the Court should adjudicate Defendants' Motion to Dismiss without regard to WinRed's 11th hour effort to evade scrutiny for the online fundraising platform bearing its name and copyright.  In any event, WinRed's gamesmanship does nothing to change the fact that its Complaint has no merit.  There is no preemption by FECA here, regardless of how WinRed attempts to define the scope of its conduct or this investigation.

---

[7] Notably, the subpoenas and CIDs served by the Attorneys General likely already cover both WinRed, Inc. (the party who was served) and WRTS, as well as any other entities used by WinRed as part of the conduct under investigation. Each of the states' subpoenas and CIDs defines "WinRed" to include "WinRed, Inc. and any of its predecessors, successors, present or former parents, subsidiaries, or affiliates, whether direct or indirect; and all directors, officers, partners, employees, agents, contractors, consultants, representatives, and attorneys of the foregoing, or any other Persons associated with or acting on behalf of the foregoing, or acting on behalf of any predecessors, successors, or affiliates of the foregoing."  *See* Lansing Decl. (ECF Doc. 24-1) Ex. 1 (Connecticut CID) at 3; Ex. 2 (Maryland Administrative Subpoena) at 2; Ex. 3 (Minnesota CID) at 4; Ex. 4 (New York Subpoena) at 3.  Based on Lansing's declaration from the *Griner* litigation, the Attorneys General understand WRTS to meet this definition and therefore to be subject to these subpoenas and CIDs.  Nevertheless, and for the avoidance of doubt, the Attorneys General will be serving separate subpoenas and CIDs on WRTS.

The Attorneys General seek to resolve this litigation as quickly as possible, so that they may proceed with their efforts to protect their states' citizens from deceptive solicitation practices and the resulting financial harm. Therefore, they respectfully ask the Court to dismiss WinRed's Complaint as expeditiously as possible, so as not to reward WinRed's wasteful and meritless efforts to delay that investigation.

## CONCLUSION

For all of the foregoing reasons, and for the reasons set forth in Defendants' opening Motion to Dismiss Brief, the Court should grant Defendants' Motion to Dismiss and Dismiss WinRed's Complaint with prejudice.

Dated:  September 2, 2021                    Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota


s/ James W. Canaday
JAMES W. CANADAY
Deputy Attorney General
Atty. Reg. No. 030234X

JASON MARISAM
Assistant Attorney General
Atty. Reg. No. 0398187

ERIN E. CONTI
Assistant Attorney General
Atty. Reg. No. 0395304

445 Minnesota Street, Suite 1400

St. Paul, Minnesota 55101-2131
(651) 757-1421 (Voice)
(651) 296-9663 (Fax)
james.canaday@ag.state.mn.us
jason.marisam@ag.state.mn.us
erin.conti@ag.state.mn.us

ATTORNEYS FOR DEFENDANT
ATTORNEY GENERAL KEITH ELLISON, IN
HIS OFFICIAL CAPACITY

LETITIA JAMES,
Attorney General of the State of New York

By: s/ Jane M. Azia_____
Jane M. Azia, Esq. (NY Bar No. 1539600)*
jane.azia@ag.ny.gov
Laura J. Levine, Esq. (NY Bar No. 2337368)*
laura.levine@ag.ny.gov
Mark Ladov, Esq. (NY Bar No. 4477550)*
mark.ladov@ag.ny.gov
Consumer Frauds and Protection Bureau
28 Liberty Street, 20th Floor
New York 10005
Phone: (212) 416-8622
Attorneys for Defendant Letitia James in her official
capacity as Attorney General of New York
*Admitted *pro hac vice*

WILLIAM TONG,
General for the State of Connecticut

By: /s/ Jonathan J. Blake_____
Jonathan J. Blake (CT Juris No. 426816)
jonathan.blake@ct.gov
Assistant Attorney General
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
Phone: (860) 808-5400
Attorney for Defendant William Tong in his official
capacity as Attorney General of Connecticut
*Admitted *pro hac vice*

BRIAN FROSH
Attorney General for the State of Maryland

By: /s/ Andrea W. Trento
Andrea W. Trento (Md. CPF No. 0806170247)*
atrento@oag.state.md.us
Assistant Attorney General
Maryland Office of the Attorney General
200 St. Paul Plaza
Baltimore, Maryland 21202
Phone: (410) 576-6472
Attorneys for Defendant Brian Frosh in his official
capacity as Attorney General of Maryland
*Admitted *pro hac vice*